2005 OK 52

**STATE of Oklahoma, ex rel. OKLA-HOMA TAX COMMISSION, Plaintiff/Petitioner,**

v.

**TEXACO EXPLORATION & PRODUCTION, INC. and Texaco, Inc., Defendants/Respondents.**

No. 100,711.

Supreme Court of Oklahoma.

June 28, 2005.

Rehearing Denied Dec. 2, 2005.

Robert K. Pezold, Joseph C. Woltz, Robert N. Lawrence, Pezold Barker & Woltz, Tulsa, OK, Sean R. McFarland, Lynn Martin–Diehl, Oklahoma Tax Commission, Oklahoma City, OK, and Henry C. Bonney, Ronald E. Corley, Bonney Corley LLP, Duncan, OK, for plaintiff/petitioner.

M. Benjamin Singletary, Oliver S. Howard, Richard B. Noulles, David E. Keglovits, Gable & Gotwals, Tulsa, OK, and Thomas T. Ellis, Ellis Leonard & Buckholts, Duncan, OK, for defendants/respondents.

Traci Nicole Weldon Ballard, Oklahoma City, OK, for amicus curiae Oklahoma State School Boards Association.

James C.T. Hardwick, Kenneth L. Hunt, Pamela S. Anderson, Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C., for amicus curiae, the Mid–Continent Oil & Gas Association of Oklahoma.

TAYLOR, J.

¶ 1 The dispositive issue in this proceeding to review a certified interlocutory order is a pure legal question: For purposes of gross production and petroleum excise taxes, what

is the method to determine gross value of gas where there is no arm's length sale of the gas at the wellhead? We conclude that in the absence of an actual arm's length sale at the wellhead, the correct method to determine gross value of gas for calculation of gross production and petroleum excise taxes is the prevailing market price method or the work-back method, whichever results in the higher value. Accordingly, we reverse the district court's partial summary judgment and remand this cause for further proceedings.

## I. The Proceedings Below

¶ 2 In December, 2002, the Oklahoma Tax Commission (OTC) filed suit in the district court in Stephens County against Texaco Exploration & Production, Inc. and Texaco Inc. (collectively Texaco). The OTC alleged Texaco intentionally devised and implemented a scheme to calculate gross production and petroleum excise taxes on a price less than the fair market value with the intent of evading payment of the taxes. The OTC alleged subject matter jurisdiction under 68 O.S. 2001, § 215. The OTC sought damages in an amount of at least $20 million in gross production and petroleum excise taxes and interest and penalty under 68 O.S.2001, § 217(A) and (F). Texaco answered, denying that it undervalued the gas and underreported the taxes, and responded with nineteen enumerated affirmative defenses, including lack of subject matter jurisdiction.

¶ 3 Each party moved for partial summary judgment on the method to determine the wellhead value of the gas in the absence of an arm's length wellhead sale. The undisputed facts on summary judgment are that Texaco produced gas in Stephens County which it gathered and processed the gas at its own gathering system and processing plant. The processing resulted in residue gas which Texaco sold at the tailgate of the plant to third parties and extracted liquid hydrocarbons and drip condensates. Texaco also gathered and processed gas purchased from other producers in the field under wellhead gas purchase contracts for a percentage of the proceeds received at the tailgate of the plant. Texaco executed a written contract with itself to purchase its gas at the wellhead

at a price based on the price it paid the other producers under the percentage of proceeds contracts. In reporting its gas production to OTC, Texaco calculated the gross production and petroleum excise taxes based on a percentage of the proceeds it received at the tailgate of the plant.

¶ 4 On summary judgment, the OTC argued that § 1001 of Title 68 of the Oklahoma Statutes and OTC Rule 710:45–1–2 require Texaco to pay taxes based on the gross proceeds realized from the first arm's length purchase of the gas. Texaco urged that it correctly paid the taxes on the production based on the prevailing price established by the comparable sales prices paid under the percent of proceeds contracts for wellhead sale of gas of like kind, quality and character in the same field as required by §§ 1001 and 1009 of Title 68.

¶ 5 The district court concluded that "in the absence of individual sales contracts, negotiated under circumstances that reflect arm's length bargaining, ... gross value of gas produced is best reflected by the prevailing price in the field for gas of similar kind, quality and character at the time of production." The district court limited its summary judgment "to the issue of law which establishes the method for determining the gross value of production under the facts in this litigation" and expressly stated that it did "not conclude that facts are undisputed as to what the prevailing price in fact was."

¶ 6 The district court certified its summary judgment for immediate review, finding that appellate review of the interlocutory order would materially advance the ultimate termination of this litigation. 12 O.S.2001, § 994. We previously granted the OTC's petition for writ of certiorari.

## II. Standard of Review

¶ 7 Taxation is an exclusively legislative function that can be exercised only under statutory authority and in the manner specified by statute. *Gay v. Thomas,* 1896 OK 67, 46 P. 578 (Sup.Ct.Okla.Terr.). Accordingly, the basis for determining gross value of gas for taxation purposes must be found in the gross production tax statutes. Statutory construction presents a pure legal

question which we review by a *de novo* standard. *Upton v. State ex rel. Department of Corrections,* 2000 OK 46, ¶ 4, 9 P.3d 84, 86. Our *de novo* review of a trial court's legal rulings is plenary, independent and non-deferential. *Gladstone v. Bartlesville Indep. Sch. Dist. No. 30,* 2003 OK 30, ¶ 5, 66 P.3d 442, 445.

### III. The Certiorari Filings

¶ 8 In the certiorari filings, the OTC contends that the district court effectively declared OTC Rule 710:45–1–2 invalid. That agency rule defines gross value of production to mean gross proceeds received by the producer. The OTC asks this Court to send this case back to the district court with instructions to apply OTC Rule 710:45–1–2 to the facts and calculate the tax owing by Texaco. Texaco, on the other hand, urges us to affirm the district court's prevailing-price ruling.

 ¶ 9 The certiorari arguments frame a controversy as to whether Texaco underreported and underpaid gross production and petroleum excise taxes, issues routinely determined in the administrative assessment of taxes under 68 O.S.2001, § 221. Because OTC alleged jurisdiction under 68 O.S.2001, § 215, we directed the parties to file briefs on the application of § 215 in light of § 221.[1]

 ¶ 10 In its brief, the OTC concedes that 68 O.S.2001, § 221 places upon it the duty to assess underreported taxes, but con-

tends that 68 O.S.2001, § 215 gives it a right to forego the administrative assessment process and sue for a judicial determination of taxes. The OTC argues that the legislative history of the Uniform Tax Procedure Code, 68 O.S.2001, §§ 201, et seq., supports such a construction of § 215. We disagree.

¶ 11 The precursor to 68 O.S.2001, § 215 was a part of the original "State Tax Uniform Procedure Act." 1939 Okla.Sess.Laws, ch. 66, § 16. The 1939 version provided that in any action to collect taxes, substantial proof of facts underlying the OTC's computation of the tax shifted the burden of proof to the taxpayer.[2] That language certainly indicated a legislative intent that the OTC may file suit for a judicial determination of tax liability; however, that language was deleted in the 1965 Uniform Tax Procedure Code.1965 Okla.Sess.Laws, ch.414. The current version of § 215 does not contain any language from which we can divine an intent to authorize the OTC to forego the administrative assessment process and file suit for judicial determination of tax liability.[3]

¶ 12 The history of 68 O.S.2001, § 221 followed the same path, enacted in the original 1939 State Tax Uniform Procedure Act and the 1965 Uniform Tax Procedure Code. The 1965 measure amended § 221, adding the requirement that the OTC "shall in writing propose the assessment of taxes or additional taxes, as the case may be, and shall

---

1. Jurisdiction is a fundamental question in every case and this Court must inquire into its own jurisdiction and the jurisdiction of the court below, *United Airlines v. State Board of Equalization,* 1990 OK 29, 789 P.2d 1305, whether raised by the parties or not. *Oklahoma City–Ada–Atoka Ry. Co. v. Parks,* 1938 OK 262, 78 P.2d 791.

2. The second paragraph of § 16 in 1939 Okla. Sess.Laws, ch. 66 read:

> In any action or proceeding for the collection of tax, penalties or interest imposed by any State tax law, proof of a computation, determination or assessment by the Tax Commission of the amount of tax, interest and penalties due to the State from a taxpayer, together with any substantial proof of the facts upon which such computation, determination or assessment is made shall be prima facie proof in such action, and the burden of proof shall then be upon the taxpayer or party sued to show that such liability as charged did not in fact exist in favor of the State.

3. 68 O.S.2001, § 215 reads:

> (a) The taxes, fees, interest, and penalties imposed or levied by any state tax law, or by this article, from the time the same shall become due, may be collected in the same manner as a personal debt of the taxpayer to the State of Oklahoma, recoverable in any court of competent jurisdiction in any action in the name of the State of Oklahoma on relation of the Oklahoma Tax Commission. Such suit may be maintained and prosecuted, and all proceedings taken, to the same effect and extent as for the enforcement of a right of action for debt. All provisional remedies available in such action shall be, and are hereby made, available to the State of Oklahoma in the enforcement of the payment of any state tax.
>
> (b) The proceeds of any judgment or order obtained hereunder shall be paid to the Tax Commission.

mail a copy of the proposed assessment to the taxpayer" when it determines the taxpayer underreported and underpaid the tax. The current version of § 221 outlines the administrative process for examining and correcting self-assessed tax reports and returns. It requires the OTC to examine a tax report or return filed with it, make necessary audits or investigations, and if additional taxes are due, issue a written proposed assessment of the additional taxes and mail a copy of the proposed assessment to the taxpayer.

¶ 13 The amendments in the 1965 legislative measure to §§ 215 and 221 demonstrate intent that the tax laws be enforced through the administrative process prior to suit in the court. Accordingly, we conclude that 68 O.S. 2001, § 215 does not authorize the OTC to forego the administrative assessment process required by 68 O.S.2001, § 221 and file suit for a judicial determination of taxes. This conclusion is consistent with the legislative history of Oklahoma's Uniform Tax Procedure Code and our decisions in taxpayer suits holding that OTC has primary jurisdiction, *Cimarron Industries, Inc. v. Oklahoma Tax Commission,* 1980 OK 190, 621 P.2d 539, and requiring a taxpayer to exhaust the administrative remedies before the courts may act. *Request of Hamm Production Co.,* 1983 OK 92, 671 P.2d 50.

■ ¶ 14 Subject matter jurisdiction is invoked by the pleadings filed with the court. *State ex rel. Turpen v. A 1977 Chevrolet Pickup Truck,* 1988 OK 38, ¶ 10, 753 P.2d 1356, 1359. Both the OTC and Texaco urge that OTC's allegations of intentional underreporting of gross production taxes for the purpose of evading taxes invoked the district court's jurisdiction under 68 O.S.2001, § 223. Title 68 O.S.2001, § 223(C) provides that "[i]n the case of either a false or a fraudulent report or return ... a proceeding in court

may be begun for the collection of such tax without assessment at any time." [4] Clearly, § 223(C) authorizes the OTC to forego the administrative assessment and file suit for a determination of tax liability in the district court based on false or fraudulent tax reporting.

■ ¶ 15 Generally, allegations of fraud or circumstances constituting fraud must be stated with particularity. 12 O.S.2001, § 2009. Pleading fraud with particularity allows the opposing party to prepare responsive pleading and defenses. *A–Plus Janitorial & Carpet Cleaning v. The Employers' Workers' Compensation Association,* 1997 OK 37, ¶ 35, 936 P.2d 916, 931. However, a failure to plead fraud with particularity may be cured by motion to supply the necessary particulars. *Id.,* 1997 OK 37, at ¶ 36, 936 P.2d at 931.

■ ¶ 16 The OTC asserts that it effectively alleged that Texaco filed false reports when it alleged that Texaco reported taxes based on the price of its gas under its single-party contract rather than the price it actually received. Texaco agrees this is a false and fraudulent tax report case and does not complain of any disadvantage caused by the OTC's failure to specifically allege false or fraudulent tax reporting. We agree with the parties that the OTC's first amended petition filed in the district court, alleging intentional schemes to evade taxes and seeking to recover the penalty for fraud with intent to evade tax, invoked the subject matter jurisdiction of the court pursuant to 68 O.S.2001, § 223(C).[5] Although § 223(C) authorizes the OTC to commence a proceeding in court for the collection of a tax without assessment, the authority is very limited. It applies only to taxpayers who failed to file a report or return or filed a false or fraudulent report or return.

---

4. The entirety of 68 O.S.2001, § 223(C) reads:
 C. In the case of either a false or fraudulent report or return, or failure to file a report or return, as required under any state tax law, the Tax Commission is authorized to compute, determine and assess the estimated amount of tax due from any information in its possession, or a proceeding in court may be begun for the collection of such tax without assessment at any time.

5. We note that the question of whether gross production tax reports filed by Texaco were false or fraudulent is not before us and nothing in this opinion is intended to support a ruling on that issue. In this opinion, we only determine that the OTC plead allegations sufficient to invoke the jurisdiction of the district court based on false or fraudulent tax reports.

¶ 17 We note that 68 O.S.2001, § 223(C) does not expressly require the OTC to plead the statute, but neither the defending taxpayer nor the court should have to speculate as to the precise statutory authority for the suit. In future petitions to commence proceedings under § 223(C), the OTC should explicitly plead jurisdiction under § 223(C). This guidance is consistent with our strict construction of taxpayer remedies provided in the Uniform Tax Procedure Code. See, *Ladd Petroleum Corp. v. Oklahoma Tax Commission*, 1980 OK 159, 619 P.2d 602; *Request of Hamm Production Co.*, 1983 OK 92, 671 P.2d 50; and, *Ladd Petroleum Corp. v. Oklahoma Tax Commission*, 1989 OK 5, 767 P.2d 879.

## IV. Method to Determine Gross Value of the Production of Gas for Gross Production and Petroleum Excise Taxes

¶ 18 The price paid for the purchase of gas at the wellhead in an arm's length transaction between the producer and the purchaser is the standard on which gross production taxes must be computed. *Apache Gas Products Corp. v. Oklahoma Tax Commission*, 1973 OK 34, 509 P.2d 109. When the first arm's length sale occurs after processing, the OTC utilizes two methods to value the gas production: 1) gross proceeds received by the producer from the first arm's length sale of the residue gas, the liquid hydrocarbons and the drip condensate less the allowable expenses, or 2) the price received for the residue gas multiplied by the wellhead MMBTU (wellhead measurement of volume and heating content) less the allowable expenses.

¶ 19 The OTC contends these are valid methods for calculating the tax under 68 O.S.2001, § 1001 and its administrative rules. Texaco, on the other hand, urges that the prevailing price is the valid method under 68 O.S.2001, § 1009(f). Texaco argues that the prevailing price method utilizes wellhead values paid under arm's length contracts with other producers for the sale of unprocessed gas at the wellhead in the same field and results in a calculation of the severance tax on Texaco's gas production the same as on other producers. The OTC argues that the

prevailing price provisions in § 1009(f) were intended to protect state revenue where the producer and purchaser enter into a sweetheart contract to sell the gas for less than the prevailing price and are not applicable to the facts in this case.

¶ 20 Sections 1001, 1009 and 1010 of the gross production statutes deal with the value of gas in comprehensive terms. These statutes 1) impose the tax upon the severance of gas at the rate of seven percent of the "**gross value of the production of gas,**" § 1001(B)(4); 2) require the reporting of the "**total value** of the mineral oil, gas, or casinghead gas, at the time and place of production, **including any and all premiums paid for the sale thereof, at the price paid, at the time of production,**" § 1010(B)(5); and 3) permit the OTC to require the tax to be paid upon the basis of the "**prevailing price**" if the gas is sold under circumstances where the sale price does not represent the cash price prevailing for gas of like kind, character or quality in the field, § 1009(f). (Bold added.)

¶ 21 In considering these statutes, Texaco urges us to follow *Oklahoma Tax Commission v. Sun*, 1971 OK 100, 489 P.2d 1078. That case concerned gas purchased at the wellhead subject to the producer's right to process the gas. The OTC assessed additional gross production taxes on the net price the producers received for the extracted liquid hydrocarbons. The *Sun* decision turned on the statutory language imposing the tax at the time and place of production in § 1001. *Id.*, 1971 OK 100, at ¶ 12, 489 P.2d at 1081. It did not construe the statutory provisions applicable herein.

¶ 22 Both parties rely on *Apache Gas Products Corp. v. Oklahoma Tax Commission, supra*. *Apache* construed the prevailing price provisions in § 1009(f). *Apache* involved the sale of low pressure gas under a wellhead purchase contract. The OTC assessed additional taxes based on a county-wide prevailing price. The trial court found that the gas purchase contract was an arm's length transaction and the price paid for the gas was the highest and best in the field; however, the trial court concluded that the OTC was not bound by that price but was

authorized to fix gross value based on the prevailing price. In overturning the trial court, *Apache* reasoned that the gross production tax statutes do not contemplate that the purchaser will pay the producer one price and deduct the gross production tax from that price but then report and pay the tax based on another price. *Apache Gas Products Corp. v. Oklahoma Tax Commission,* 1973 OK 34, at ¶ 16, 509 P.2d at 113.

¶ 23 Ruling against the OTC, *Apache* also provided guidance for future applications of § 1009(f). The OTC should calculate the gross production tax on the gross proceeds realized by each producer from his individual sales contracts unless the contract is not a reasonably prudent exercise of arm's length bargaining; and where the contract does not reflect arm's length bargaining, the OTC should calculate the tax on the prevailing price in the field at the time of production. *Apache Gas Products Corp. v. Oklahoma Tax Commission,* 1973 OK 34, at ¶ 27, 509 P.2d at 116. *Apache* said the field, to be determined in each case, should be equated with the common source of supply as that term is understood in the industry. *Id.*

¶ 24 Although *Apache* is distinguishable on the facts, its reasoning supports application of *Howell v. Texaco, Inc.,* 2004 OK 92, 112 P.3d 1154, in this case. Royalty owners of gas produced and processed by Texaco in Stephens County initiated the suit in *Howell v. Texaco, Inc. Howell* decided, for purposes of royalty payments, what is the appropriate method for determining market value of gas at the wellhead if the first arm's length sale occurs after the gas has been processed.

¶ 25 *Howell* recognized three methods of establishing market value at the wellhead: 1) the actual sale price paid through arm's length negotiation; and, in the absence of an arm's length wellhead purchase, 2) the prevailing market value method, and 3) the work-back method whereby the market value at the wellhead is calculated by subtracting allowable costs and expenses from the proceeds of the first downstream, arm's length

sale. *Id.,* 2004 OK 92, at ¶¶ 18–20, 112 P.3d 1154. *Howell* concluded that in the absence of an arm's length wellhead purchase, the royalty payments must be calculated on the prevailing market price or the work-back method whichever one is higher. *Id.,* 2004 OK 92, at ¶ 22, 112 P.3d 1154. *Howell* also concluded that the proceeds from the components of the gas are considered in the work-back method. *Id.,* 2004 OK 92, at ¶ 22, 112 P.3d 1154.

¶ 26 The methods for establishing wellhead value in *Howell* fall within the comprehensive language used in the pertinent gross production tax statutes-gross value in § 1001(B)(4); total value including any and all premiums in § 1010(B)(5); and prevailing price in § 1009(f). The OTC already effectively utilizes these methods in the administrative assessment process when it calculates 1) the gross proceeds received by the producer from the first arm's length sale of the residue gas, the liquid hydrocarbons and the drip condensate less the allowable expenses or 2) the prevailing price under *Apache*. And, other provisions in these statutes contemplate that the purchaser will report and pay the gross production tax based on the price it paid to the producer and the royalty owners.[6] Accordingly, we hold that in the absence of an actual arm's length sale at the wellhead, gross value of gas for calculation of gross production taxes is to be determined by using the prevailing price method or the work-back method adopted in *Howell v. Texaco, Inc.,* 2004 OK 92, 112 P.3d 1154, whichever results in the higher value. We further hold that Texaco's purported contract with itself to purchase its own gas at the wellhead cannot be the basis to establish value of gas for calculating gross production taxes.

## V. Conclusion

¶ 27 We conclude that 68 O.S.2001, § 215 does not authorize the OTC to forego the administrative assessment process required by 68 O.S.2001, § 221 and file suit for a

---

6. 68 O.S.2001, § 1009(d) requires the purchaser of gas sold at the time of production to withhold the gross production taxes in making settlements with the producer and the royalty owner and

report and pay the tax to the OTC. 68 O.S.2001, § 1001(C) provides that the gross production tax attaches to and is a lien upon the royalty interest.

judicial determination of taxes; and that the OTC's first amended petition filed in the district court, alleging intentional schemes to evade taxes and seeking to recover the penalty for fraud with intent to evade tax, invoked the subject matter jurisdiction of the court pursuant to 68 O.S.2001, § 223(C). We hold that in the absence of an actual arm's length sale at the wellhead, gross value of gas for calculation of gross production taxes is to be determined by using the prevailing price method or the work-back method adopted in *Howell v. Texaco, Inc.*, 2004 OK 92, 112 P.3d 1154, whichever results in the higher value. We further hold that Texaco's purported contract with itself to purchase its own gas at the wellhead cannot be the basis to establish value of gas for calculating gross production taxes. The district court erred in granting summary judgment on the legal issue in favor of Texaco.

**SUMMARY JUDGMENT OF THE DISTRICT COURT REVERSED; CAUSE REMANDED FOR FURTHER PROCEEDINGS.**

¶ 28 ALL JUSTICES CONCUR.