2014 OK 95

**AMERICAN AIRLINES, INC.,**
Protestant/Appellant,

v.

**STATE of Oklahoma, ex rel. OKLA-
HOMA TAX COMMISSION,**
Respondent/Appellee.

No. 112489.

Supreme Court of Oklahoma.

Nov. 18, 2014.

57

Robert O. O'Bannon, Catherine L. Campbell, Fred A. Leibrock, and Chase H. Schnebel, Phillips Murrah P.C., Oklahoma City, Oklahoma, for Appellant.

Douglas B. Allen and Marjorie L. Welch, Oklahoma Tax Commission, Oklahoma City, Oklahoma, for Appellee.

COMBS, J.

¶ 1 The main issue on appeal is whether the purchase of electricity and natural gas utility services qualifies for a sales tax exemption. The Appellant, American Airlines, Inc., ("AA") was denied a refund for the sales tax it paid on its purchases of electricity and natural gas utility services during the 2006 calendar year. To address this issue we must determine whether the Oklahoma Sales Tax Code, 68 O.S. §§ 1350–1354.6, and the Streamlined Sales and Use Tax Administration Act, 68 O.S. § 1354.14 et seq. (collectively the "Code") provides for such an exemption. AA originally requested a refund of sales or use tax paid on its purchase of utility services and other items. On appeal, AA only contests the denial of its refund claim for sales tax it paid on the utility services.

## I. Facts and Procedural History
### A. The American Airlines Facility

¶ 2 The record reflects AA operates the world's largest private aircraft maintenance facility ("AA Facility"). The AA Facility is located at the Tulsa International Airport in Tulsa, Oklahoma. The Account Maintenance and Compliance Division ("Division") of the Appellee, the Oklahoma Tax Commission ("OTC") does not dispute that AA was a "qualified aircraft maintenance facility" during the 2006 calendar year. A "qualified aircraft maintenance facility" is currently and during the relevant periods of this case, defined as:

> [A] facility operated by an air common carrier at which there were employed at least two thousand (2,000) full-time-equivalent employees in the preceding year as certified by the Oklahoma Employment Security Commission and which is primarily related to the fabrication, repair, alteration, modification, refurbishing, maintenance, building or rebuilding of commercial aircraft or aircraft parts used in air common carriage . . .

Title 68 O.S.2006, § 1357(20) (also referred to herein as the Parts Exemption).

¶ 3 The AA Facility is a huge facility comprising over 3 million square feet and employs over 6,000 employees. It is also the only "qualified aircraft maintenance facility" in the state. Services performed at the AA Facility include entire airframe refurbishment, engine maintenance, painting, washing, part manufacturing, testing and other critical tasks. AA asserts the facility uses significant amounts of natural gas and electricity to

run the thousands of tools, lathes, ovens, steam boilers, heating tanks and innumerable other pieces of energy-consuming equipment employed in aircraft repair.

¶ 4 The AA Facility is composed of four main areas of operation within the airport. The Mingo Facility, the Pine Facility, the Memorial Facility and the Apache Facility collectively compose the AA Facility. The administrative law judge ("ALJ") found each of these facilities used electricity and natural gas in aircraft repair and maintenance.

¶ 5 The AA Facility has maintained a Federal Aviation Administration ("FAA") Repair Station Certificate since 1961. To maintain this certification, AA is required to follow FAA regulations and guidelines established by original equipment manufacturers. AA asserts these regulations require it to maintain segregated and controlled workspaces for specific repair operations, segregated storage and protection of all aircraft materials and articles undergoing repair, and suitable permanent housing (i.e., aircraft hangars). The FAA regulations also require the facility to include "[v]entilation, lighting, and control of temperature, humidity, and other climatic conditions sufficient to ensure personnel perform maintenance, preventative maintenance, or alterations to the standards required by this part." [1]

### B. Pre–Appeal History

¶ 6 In February 2009, AA filed a sales or use tax refund claim with the Division. The basis of the claim was for sales or use tax allegedly remitted in error on exempt purchases of electricity and natural gas utility services, aircraft parts, repair parts, supplies and tooling, including certain cleaners, chemicals and gases, for the 2006 calendar year.

¶ 7 AA asserted the utility services and other items were exempt pursuant to 68 O.S. Supp.2006, § 1357(20) and (28). Paragraph (20) ("Parts Exemption") provided:

There are hereby specifically exempted from the tax levied by the Oklahoma Sales Tax Code:

. . . .

20. **Sales of aircraft and aircraft parts provided such sales occur at a qualified aircraft maintenance facility.** As used in this paragraph, "qualified aircraft maintenance facility" means a facility operated by an air common carrier at which there were employed at least two thousand (2,000) full-time-equivalent employees in the preceding year as certified by the Oklahoma Employment Security Commission and which is primarily related to the fabrication, repair, alteration, modification, refurbishing, maintenance, building or rebuilding of commercial aircraft or aircraft parts used in air common carriage. For purposes of this paragraph, "air common carrier" shall also include members of an affiliated group as defined by Section 1504 of the Internal Revenue Code, 26 U.S.C., Section 1504; (emphasis added).

Paragraph (28) ("Services Exemption") provided:

28. Beginning July 1, 2005, sales of aircraft engine repairs, modification, and replacement parts, sales of aircraft frame repairs and modification, aircraft interior modification, and paint, and **sales of services employed in** the repair, modification and replacement of parts of aircraft engines, aircraft frame and interior repair and modification, and paint; (emphasis added).

¶ 8 The total amount of the original refund claim was $840,880.50 of which $781,229.01 constituted utility services. On June 10, 2009, the Division allowed a refund in the amount of $3,463.56 net of remuneration and denied $837,345.22. None of the refund was for electricity and natural gas utility services. The reason given for the denial was:

Purchases were included in the request for items that do not become a part of the aircraft, aircraft frame, or aircraft engine per 68 OS 1357(20) and (28)

¶ 9 AA's main point of contention is that 68 O.S. Supp.2006, § 1357(28) (Services Exemption) does not require electricity and natural gas or aircraft parts, repair parts, supplies and tooling, to become part of the aircraft, aircraft frame, or aircraft engine. Rather,

---

1. 14 CFR § 145.103(a)(2)(v).

such items only need be "employed in" repair or maintenance. It was further asserted that absent these items the repair and maintenance of qualifying aircraft could not take place. The protest also requested a hearing before the OTC.

¶ 10 On October 14, 2011, through its response to interrogatories, AA increased the amount in controversy by $311,040.31. This increase was attributed only to electricity and natural gas utility services employed in the repair and maintenance of aircraft pursuant to 68 O.S. § 1357(28) during the 2006 calendar year. This increased the total amount in controversy concerning utility services to $1,092,269.32.

¶ 11 A hearing was scheduled for May 6, 2013. In its pre-hearing brief the Division asserted two new arguments in support of the denial. The first argument was, since 2003, electricity and gas [2] has become part of the definition of "tangible personal property" for purposes of the Code. Title 68 O.S. Supp. 2005, § 1352(23).[3] It asserted, sales of tangible personal property are not sales of services and therefore, as sales of tangible personal property, electricity and natural gas do not qualify for the Services Exemption (68 O.S. Supp.2006, § 1357(28)). The Division also asserted if the court should find that purchases of electricity and natural gas constitute "sales of services" then AA has failed to document that all of the electricity and natural gas purchased were employed in the repair, modification and replacement of parts of aircraft engines, aircraft frame and interior repair and modification and paint.

¶ 12 The Division's second new argument was that a 2012 legislative amendment ("2012 Amendment") enlarged the scope of the Parts Exemption beginning July 1, 2012, to exempt sales of machinery, tools, supplies, equipment and "related tangible personal property" and services. This amended version reads as follows:

20. Sales of aircraft and aircraft parts provided such sales occur at a qualified aircraft maintenance facility. As used in this paragraph, "qualified aircraft maintenance facility" means a facility operated by an air common carrier, *including one or more component overhaul support buildings or structures in an area owned, leased or controlled by the air common carrier,* at which there were employed at least two thousand (2,000) full-time-equivalent employees in the preceding year as certified by the Oklahoma Employment Security Commission and which is primarily related to the fabrication, repair, alteration, modification, refurbishing, maintenance, building or rebuilding of commercial aircraft or aircraft parts used in air common carriage. For purposes of this paragraph, "air common carrier" shall also include members of an affiliated group as defined by Section 1504 of the Internal Revenue Code, 26 U.S.C., Section 1504. *Beginning July 1, 2012, sales of machinery, tools, supplies, equipment and related tangible personal property and services used or consumed in the repair, remodeling or maintenance of aircraft, aircraft engines, or aircraft component parts which occur at a qualified aircraft maintenance facility;*

68 O.S. Supp.2012, § 1357(20), amended by 2012 Okla. Sess. Laws c. 230, § 2; the 2012 amendment language is underlined.

The Division argued that AA's claim attributable to purchases of tools, supplies, cleaners and other chemicals should be denied as these items were not exempt until July 1, 2012, pursuant to the amendment. It should be noted the Division did not claim in its pre-hearing brief that the 2012 Amendment in any way affected AA's refund claim concerning electricity and natural gas or the Services Exemption (68 O.S. Supp.2006, § 1357(28)).

2. The definition does not specify "natural gas" it only states "gas."

3. Title 68 O.S. Supp.2005, § 1352(23) provided: 23. "Tangible personal property" means personal property that can be seen, weighed, measured, felt, or touched or that is in any other manner perceptible to the senses. "Tangible personal property" includes electricity, water, gas, steam and prewritten computer software. This definition shall be applicable only for purposes of the Oklahoma Sales Tax Code;

Electricity and "gas" (not specifically natural gas) were added to this definition in 2003 Okla. Sess. Laws c. 413. § 1.

¶ 13 At the May 6, 2013, hearing, AA called two witnesses to testify; Wendyl Griffin and Patricia G. Tuite. Wendyl Griffin is an AA employee and his testimony concerned the many operations performed at the AA Facility with an emphasis on the facility's use of electricity and natural gas. He testified that the AA Facility performs aircraft repairs, including aircraft frame repairs, modifications, including modification of the aircraft frame and interior, and replacement of aircraft engines and such functions use electricity and natural gas. He further testified that in 2006 AA performed work on another company's aircraft (Allegiant) which represented a nominal two percent (2.0%) of AA's work. He also testified that both the FAA and original equipment manufacturer sometimes have requirements AA must comply with including specifying temperature ranges and humidity levels and the environment workers must be in while performing specific work.

¶ 14 AA's next witness was Patricia G. Tuite. Ms. Tuite is AA's expert witness who conducted a predominant use study on the AA Facility. The purpose of the study was to determine whether the AA Facility was predominantly used for aircraft repair and maintenance.[4] Ms. Tuite used a square footage methodology because Oklahoma had not established a methodology for conducting a predominant use study regarding the Services Exemption. She adopted this methodology from Colorado. In her opinion, a square footage analysis was a conservative and accurate methodology to determine usage of aircraft maintenance and repair. She testified that the alternative to a square footage analysis would be to conduct an equipment by equipment analysis. This would entail checking the usage of electricity and natural gas on every piece of equipment at the AA Facility. Her testimony implied that such an analysis was unfeasible.

¶ 15 Ms. Tuite provided testimony concerning her second and final report dated January 15, 2013. In this report, Ms. Tuite determined seventy-six and nine tenths percent (76.9%) of the electricity and ninety-nine and nine tenths percent (99.9%) of the natural gas used at the AA Facility was related to aircraft repair and maintenance activities. Therefore, under a predominant use theory, because a majority of the square footage at the AA Facility during 2006 was determined to be predominantly used in aircraft maintenance and repairs then all of the electricity and natural gas purchased at those meters was entitled to a sales tax refund.

¶ 16 In his Findings, Conclusions and Recommendations, filed November 6, 2013, the ALJ determined Tuite qualified as an expert witness and he admitted her reports into evidence.[5] The ALJ determined an "analysis of the sales tax exemptions at issue should ultimately determine the relevance of whether [AA] needs an expert witness/expert report on 'predominant use' based upon 'square footage' or any other methodology."

¶ 17 The ALJ found this case presented questions of law on two sales tax exemptions for the 2006 Tax Year (68 O.S. § 1357(20) (Parts Exemption) and (68 O.S. § 1357(28) (Services Exemption))). He also noted AA is the only taxpayer in Oklahoma who can qualify for these exemptions. The ALJ determined the only issues left concerning

---

4. AA claims the OTC requested a predominant use study but provided no guidance on how it should be conducted. The OTC admitted it discussed a predominant use study with AA. In its pre-hearing brief the Division determined that neither statute nor rule provides for the application of a predominant use theory to qualify for the Services Exemption. It did note, however, that predominant use is referenced in the manufacturing exemption rule, Okla. Admin. Code § 710: 65–13–150.1(d) (June 25, 2000), which provides in pertinent part:

> (d) Predominant use. Incidental use of otherwise qualifying items or machinery predominantly used in the manufacturing operation will not result in disqualification:

> (1) Where an item is predominantly used in the manufacturing operation, any non-exempt use will be considered incidental, and will not disqualify the item from the exemption.
> **(2) Where electricity or natural gas is metered through a single meter, and the predominant use is in the manufacturing operation, any remaining usage will be considered incidental, and will be exempt.**
> (emphasis added)

5. The Division had filed a Motion in Limine on April 5, 2013, to exclude Tuite's testimony and reports.

electricity and natural gas utility services were whether they were exempt under the Services Exemption as "sales of services employed in the repair, modification and replacement of parts of aircraft engines, aircraft frame and interior repair and modification, and paint," and if so, is the amount of the exemption limited.

¶ 18 The ALJ found it was unclear what services the Services Exemption applied to. Therefore, he determined the Services Exemption was ambiguous and should be strictly construed against the allowance of an exemption. The ALJ noted neither party specifically expressed their position on the ambiguity of the Services Exemption; however, by implication, AA's position must be that the exemption is clear and unambiguous and the Division's must be that the exemption is ambiguous.

¶ 19 The ALJ determined if the Services Exemption is plain and unambiguous then AA failed to address three problems. For his first contention, the ALJ presented a new argument. The ALJ asserted, AA seeks a refund of sales tax it paid to its vendors for electricity and natural gas purchases and AA did not sell electricity or natural gas to its customers. The ALJ stated:

[t]he electricity and natural gas (as services) were at best 'used or consumed' in the repair of aircraft or aircraft parts for the Claimant's customer(s), not the 'sale of services employed' in the repair of aircraft or aircraft parts for the Claimant's customers.

¶ 20 The ALJ's second contention is that in 2003 the Legislature amended the definition of "tangible personal property" to include electricity and gas.[6] He asserted that since this amendment, electricity and "natural"[7]

gas are by definition tangible personal property and therefore the term "services" in the Services Exemption during 2006 was not meant to include electricity and natural gas.

¶ 21 The ALJ's third contention concerns the 2012 Amendment to the Parts Exemption. The amendment, in pertinent part, states:

Beginning July 1, 2012, sales of machinery, tools, supplies, equipment and related tangible personal property and services used or consumed in the repair, remodeling or maintenance of aircraft, aircraft engines, or aircraft component parts which occur at a qualified aircraft maintenance facility;

Title 68 O.S. Supp.2012, § 1357(20).

The ALJ asserted the Legislature will not be presumed to have intended a vain or absurd result[8] and this amendment would not have been necessary if the Services Exemption already included electricity and natural gas.[9]

¶ 22 The ALJ determined whether electricity and natural gas are defined as "tangible personal property" or as "services" they are subject to the imposition of sales tax unless specifically exempted by the Sales Tax Code. He mentioned the following three examples where electricity and natural gas were specifically exempted in 2006:

8. Sale of natural or artificial gas and electricity, and associated delivery or transmission services, when sold exclusively for residential use ...

31. Beginning January 1, 2004, sales of electricity and associated delivery and transmission services, when sold exclusively for use by an oil and gas operator for reservoir dewatering projects and associated operations....

6. The amendments to 68 O.S. Supp.2003, § 1352(23); 2003 Okla. Sess. Laws c. 413, § 1, eff. Nov. 1, 2003, are as follows: "Tangible personal property" means personal property which may *that can* be seen, weighed, measured, felt, or touched or which *that* is in any other manner perceptible to the senses. *"Tangible personal property" includes electricity, water, gas, steam and prewritten computer software. This definition shall be applicable only for purposes of the Oklahoma Sales Tax Code;*

7. See note 7 supra, the 2003 Amendment does not specifically mention "natural gas" it uses the term "gas".

8. *Strelecki v. Oklahoma Tax Com'n,* 1993 OK 122, 872 P.2d 910.

9. This is the first time an argument had been made tying the 2012 Amendment to an exemption on electricity and natural gas or the Services Exemption. The Division had not previously made this connection.

35. Sales of electricity to the operator, specifically designated by the Oklahoma Corporation Commission, of a spacing unit or lease . . .

Title 68 O.S. Supp.2006, § 1357; (2006 Okla. Sess. Laws, 2nd Ex.Sess., c. 44, § 5, eff. July 1, 2007).

¶ 23 The ALJ next asserted that statutes exempting property from taxation are strictly construed against the allowance of an exemption.[10] He noted, only where the intent of the Legislature cannot be ascertained from a statute's text, as occurs when ambiguity or conflict exists, may rules of statutory construction be employed.[11] Legislative intent must be given effect and such intent is ascertained from a general consideration of an entire act.[12] Nonetheless, courts cannot enlarge the taxing act's ambit to make its provisions applicable to cases not clearly within the Legislature's contemplation or to fill lacunae in the revenue law in a manner that would distort the enactment's plain language.[13] The ALJ concluded AA failed to meet its burden of proof by preponderance of the evidence that the Division's denial of a refund for electricity and natural gas utility services was incorrect.[14] Because the Findings, Conclusions and Recommendations found AA was not eligible to exempt sales tax it paid on its 2006 purchases of electricity and natural gas utility services, it did not specifically determine whether a predominant use analysis and/or square footage methodology would have been appropriate to determine the amount of a sales tax exemption.

¶ 24 On November 21, 2013, AA filed an Application For A Hearing En Banc with the OTC. By Order, on December 17, 2013, the OTC denied AA's application and adopted the ALJ's Findings, Conclusions and Recommendations. AA appealed the Order by filing its Petition in Error on January 16, 2014. This Court granted AA's Motion to Retain on February 25, 2014. This case was assigned to this office on June 19, 2014.

## II. STANDARD OF REVIEW

¶ 25 The parties agree this is a case of first impression. When the OTC, an administrative agency, acts in its adjudicative capacity, its orders will be affirmed on appeal if 1) the record contains substantial evidence supporting the facts upon which the order is based and 2) the order is free of legal error. *Neer v. State ex rel. Oklahoma Tax Comm'n*, 1999 OK 41, ¶ 3, 982 P.2d 1071, 1073; *See Dugger v. State of Oklahoma ex rel. Oklahoma Tax Comm'n*, 1992 OK 105, ¶ 9, 834 P.2d 964, 968. The dispositive issues in this case revolve around whether the term "sales of services employed in" in the Services Exemption (68 O.S. Supp.2006, § 1357(28)) encompasses electricity and natural gas utility services. To resolve these issues we must first ascertain the meaning of the phrase "sales of services employed in." We are therefore presented with a question of statutory interpretation. Statutory interpretation

10. *Blitz U.S.A., Inc. v. Oklahoma Tax Comm'n*, 2003 OK 50, ¶ 14, 75 P.3d 883, 888.

11. *Blitz*, 2003 OK 50 at ¶ 14, 75 P.3d 883, "where a statute is plain and unambiguous, it will not be subject to judicial construction, but will be given the effect its language dictates."

12. *Globe Life and Acc. Ins. Co. v. Oklahoma Tax Comm'n*, 1996 OK 39, ¶ 10, 913 P.2d 1322, 1327.

13. *Globe*, 1996 OK 39 at ¶ 10, 913 P.2d 1322.

14. Okla. Admin. Code § 710:1-5-47 (June 25, 1999):

In all administrative proceedings, unless otherwise provided by law, the burden of proof shall be upon the protestant to show in what respect the action or proposed action of the Tax Commission is incorrect. If, upon hearing, the protestant fails to prove a prima facie case, the Administrative Law Judge may recommend that the Commission deny the protest solely upon the grounds of failure to prove sufficient facts which would entitle the protestant to the requested relief.

Okla. Admin. Code § 710:1-5-77 (June 25, 1999) provides in pertinent part:

(a) In order to have the assessment adjusted or abated, the taxpayer must demonstrate, by a preponderance of the evidence, that the assessment or some portion thereof is clearly erroneous.

(b) For purposes of Section 221(e) of Title 68 of the Oklahoma Statutes and Part 7 of this Subchapter, "preponderance of the evidence" means the evidence which is of greater weight or more convincing than the evidence which is offered in opposition to it; evidence which as a whole shows that the fact sought to be proved is more probable than not.

presents a question of law which is subject to our *de novo* review.[15] The OTC's legal rulings are subject to an appellate court's plenary, independent and nondeferential reexamination.[16] We review *de novo* its rulings on these dispositive issues.

## III. ANALYSIS

### A. The Contested Issues and Arguments

¶ 26 On appeal, AA only contests that portion of the refund denial pertaining to the 2006 sales tax it paid on electricity and natural gas utility services. AA does not contest the OTC's determination that sales tax paid on purchases of gases, like Argon and Acetylene, shop equipment, tools and chemicals were not exempt. The sole issue on appeal is whether the Services Exemption (68 O.S. Supp.2006, § 1357(28)) exempts electricity and natural gas utility services. The issue of whether a predominant use theory and square footage methodology was appropriate to determine the amount of a sales tax refund is not before this Court at this time. Although that issue was presented to the ALJ, his adopted Findings, Conclusions and Recommendations did not specifically address that issue. The ALJ determined AA did not prove the refund denial was incorrect and therefore did not proceed further to determine the appropriateness of·a methodology.

¶ 27 The 2006 Services Exemption at issue provided:

There are hereby **specifically** exempted from the tax levied by the Oklahoma Sales Tax Code:

. . . .

28. Beginning July 1, 2005, sales of aircraft engine repairs, modification, and replacement parts, sales of aircraft frame repairs and modification, aircraft interior modification, and paint, and **sales of services employed in the repair, modification and replacement of parts of aircraft engines, aircraft frame and interior repair and modification, and paint;** (emphasis added).

68 O.S. Supp.2006, § 1357(28).

The adopted Findings, Conclusions and Recommendations determined AA is the only entity in Oklahoma that qualifies for both the Parts Exemption and Services Exemption (68 O.S. Supp.2006, § 1357(20) and (28)). AA asserts the term "sales of services," in the Services Exemption (68 O.S. Supp.2006, § 1357(28)) includes the electricity and natural gas utility services it purchased in 2006 from a utility company(s) at meters located at the AA Facility. AA's expert witness testified that such utility services were predominantly "employed in the repair, modification and replacement of parts of aircraft engines, aircraft frame and interior repair and modification, and paint." The amount of the sales tax refund in controversy is $1,092,269.32.

¶ 28 The OTC's original reason for denial was "[p]urchases were included in the request for items that do not become a part of the aircraft, aircraft frame, or aircraft engine per 68 OS 1357(20) and (28)." AA found this denial to be in error because "services" can never become part of the aircraft, aircraft frame, or aircraft engine.

¶ 29 Following the original denial, the gist of the OTC's main arguments are as follows: 1) the Services Exemption's language, "sales of services employed," is not defined in the Code and is ambiguous and since 2003, the Code defines electricity and gas as "tangible personal property," [17] therefore those items cannot be deemed "services" for purposes of the Code; 2) a 2012 amendment to 68 O.S. § 1357(20) (Parts Exemption) expanded the Parts Exemption beginning July 1, 2012, to include tangible personal property and services used or consumed in aircraft repairs, if the Services Exemption had already included electricity and natural gas then this amendment would have been in vain; and 3) the

---

**15.** *Multiple Injury Trust Fund v. Pullum,* 2001 OK 115, ¶ 8, 37 P.3d 899, 903–904; *Samman v. Multiple Injury Trust Fund,* 2001 OK 71, ¶ 8, 33 P.3d 302, 305; *State ex. rel. Oklahoma Tax Com'n v. Texaco Exploration & Production, Inc.,* 2005 OK 52, ¶ 7, 131 P.3d 705, 707–708.

**16.** *Blitz U.S.A., Inc. v. Oklahoma Tax Comm'n,* 2003 OK 50, ¶ 6, 75 P.3d 883, 885.

**17.** Title 68 O.S. Supp.2003, § 1352(23).

Services Exemption requires AA to be the vendor of services, not the purchaser of services.

## B. Exemption Statutes

¶ 30 This appeal concerns a sales tax exemption statute (68 O.S. Supp.2006, § 1357(28) (Services Exemption)). Statutes exempting property from taxation are to be strictly construed against the claimant. *Blitz U.S.A., Inc., v. Oklahoma Tax Comm'n*, 2003 OK 50, ¶ 14, 75 P.3d 883, 888. Claims of exemption must be by express grant. *In re Noble's Estate*, 1938 OK 324, ¶ 7, 183 Okla. 148, 80 P.2d 243, 245. An exemption cannot exist by implication and a doubt is fatal to the claim of exemption. *Oklahoma City v. Shields*, 1908 OK 195, ¶ 10, 22 Okla. 265, 100 P. 559.

¶ 31 In *Colcord v. Granzow*, 1928 OK 211, ¶ 18, 137 Okla. 194, 278 P. 654, 660, this Court held:

[t]he rule of strict construction, as applied to statutes, does not mean that words shall be so restricted as not to have their full meaning, but merely means that everything shall be excluded from the operation of the statutes so construed which does not clearly come within the meaning of the language used.

The *Colcord* Court also found the following language from page 1076 in Volume 25 of *Ruling Case Law* to be persuasive:

[t]he rule of strict construction comes into play only when the language, after analysis and subjection to the ordinary rules of interpretation, presents ambiguity.

*Colcord*, 1928 OK 211 at ¶ 18, 278 P. 654. This Court has held that tax exemptions must be construed sensibly in order to give effect to the governing legislative scheme. *Blitz U.S.A, Inc.*, 2003 OK 50 at ¶ 16, 75 P.3d 883. We have given language in an exemption statute a "practical construction" when the OTC's interpretation imposed a restriction not warranted by the language of the statute. *Schulte Oil Co., Inc. v. Oklahoma Tax Comm'n*, 1994 OK 103, ¶ 24, 882 P.2d 65, 74; *See Dolese Bros. Co. v. State ex rel. Oklahoma Tax Comm'n*, 2003 OK 4, ¶ 21, 64 P.3d 1093, 1101–1102.

## C. Legislative Scheme

¶ 32 The OTC, by its adoption of the ALJ's Findings, Conclusions and Recommendations, determined that AA is the only entity in the state who can benefit from the Parts Exemption and the Services Exemption. There is nothing in the record to show that any other entity has ever attempted to benefit from these exemptions. The record reflects AA is the world's largest private aircraft repairer. AA is one of Oklahoma's largest employers, employing over 6,000 persons at its facility in Tulsa, Oklahoma. The legislative scheme behind the Services Exemption was undoubtedly to provide a benefit to one of Oklahoma's largest employers.

## D. Rules of Statutory Construction

¶ 33 The cardinal rule of statutory construction is to ascertain and give effect to the legislative intent and purpose as expressed by the statutory language. *Naylor v. Petuskey*, 1992 OK 88, ¶ 4, 834 P.2d 439, 440; *Ledbetter v. Howard*, 2012 OK 39, ¶ 12, 276 P.3d 1031, 1035. If the legislative intent cannot be ascertained from the language of a statute, as in the cases of ambiguity, we must apply rules of statutory construction. *YDF, Inc. v. Schlumar, Inc.*, 2006 OK 32, ¶ 6, 136 P.3d 656, 658. The test for ambiguity in a statute is whether the statutory language is susceptible to more than one reasonable interpretation. *In Matter of J.L.M.*, 2005 OK 15, ¶ 5, 109 P.3d 336, 338. Where a statute is ambiguous or its meaning uncertain it is to be given a reasonable construction, one that will avoid absurd consequences if this can be done without violating legislative intent. *Wylie v. Chesser*, 2007 OK 81, ¶ 19, 173 P.3d 64, 71. *See Udall v. Udall*, 1980 OK 99, ¶ 11, 613 P.2d 742, 745, ("[i]n ascertaining legislative intent, the language of the entire Act should be construed with a reasonable and sensible construction"); *Ledbetter v. Oklahoma Alcoholic Beverage Laws Enforcement Comm'n*, 1988 OK 117, ¶ 7, 764 P.2d 172, 179, ("[s]tatutory construction that would lead to an absurdity must be avoided and a rational construction should be given to a statute if the language fairly permits."). The legislative intent will be ascertained from the whole act in light of its general purpose and objec-

tive considering relevant provisions together to give full force and effect to each. *State ex rel. Dept. of Human Services v. Colclazier,* 1997 OK 134, ¶ 9, 950 P.2d 824, 827; *Keating v. Edmondson,* 2001 OK 110, ¶ 8, 37 P.3d 882, 886. Any doubt as to the purpose or intent of a statute may be resolved by resort to other statutes relating to the same subject matter. *Naylor,* 1992 OK 88 at ¶ 4, 834 P.2d 439. This Court will not limit consideration to one word or phrase but will consider the various provisions of the relevant legislative scheme to ascertain and give effect to the legislative intent and the public policy underlying the intent. *YDF, Inc.,* 2006 OK 32 at ¶ 6, 136 P.3d 656.

### E. Services Exemption

### 1. The Term "Services" in the Services Exemption Includes Electricity and Natural Gas Utility Services

¶ 34 All sales of tangible personal property, natural gas, and electricity are subject to sales tax unless "otherwise exempted." [18] Title 68 O.S. Supp.2006, § 1354(A)(1) and (2) provided:

A. There is hereby levied upon all sales, **not otherwise exempted in the Oklahoma Sales Tax Code,** an excise tax of four and one-half percent (4.5%) of the gross receipts or gross proceeds of each sale of the following:

1. **Tangible personal property,** except newspapers and periodicals;

2. **Natural or artificial gas, electricity,** ice, steam, or **any other utility or public service,** except water, sewage and refuse. Provided, the rate of four and one-half percent (4.5%) shall not apply to sales subject to the provisions of paragraph 6 of Section 1357 of this title;

¶ 35 Title 68 O.S. Supp.2006, § 1357(28) provided a specific exemption for "sales of services employed in the repair, modification and replacement of parts of aircraft engines, aircraft frame and interior repair and modification, and paint." During 2006, tangible personal property was defined as follows:

23. "Tangible personal property" means personal property that can be seen, weighed, measured, felt, or touched or that is in any other manner perceptible to the senses. "Tangible personal property" **includes electricity,** water, **gas,** steam and prewritten computer software. This definition shall be applicable only for purposes of the Oklahoma Sales Tax Code; (emphasis added).

Title 68 O.S. Supp.2006, § 1352(23).

¶ 36 The OTC asserts the definition of "tangible personal property" during 2006 included natural gas and electricity and the term "services" is not defined in the Code. Electricity and "gas" was added to the definition of "tangible personal property" in 2003 [19] after § 1354(A)(2)'s language was in effect. The OTC contends it is ambiguous whether the term "services" in the Services Exemption was meant to include electricity and natural gas. In reaching this position, the OTC resorted to other sections in the Code to determine the meaning of "services." The OTC focused on § 1352's definition of "tangible personal property." The gist of the OTC's argument is that the 2003 amendment to this definition showed the legislative intent was to exclusively refer to electricity and natural gas as "tangible personal property" in the Code notwithstanding § 1354(A)(2)'s reference to electricity and natural gas as a utility service. Therefore, the OTC asserts, the term "services" in the Services Exemption does not include electricity and natural gas. This argument implies the Legislature inadvertently left electricity and natural gas in § 1354(A)(2) when it amended the definition of "tangible personal property."

¶ 37 AA asserts the term "services" in § 1357(28) (Services Exemption) is not ambiguous. Section 1354(A)(2) taxes electricity and natural gas as utility services and the Services Exemption provides a specific exemption for "services employed in" aircraft maintenance and repair. AA contends the Legislature did not amend § 1354(A)(2) when it amended the definition of "tangible personal property" because it understood electricity and natural gas can be purchased as "tangi-

---

18.  Title 68 O.S. Supp.2006, § 1354.

19.  2003 Okla. Sess. Laws c. 413, § 1 (SB 708; eff. Nov. 1, 2003).

ble personal property" **or** as a "service" from a utility company. AA asserted the sale of natural gas from the wellhead or wholesale electricity from a generation plant may be considered "tangible personal property" but it is a service when provided by a utility company. Further, AA argues there is a clear distinction between wholesale electricity and electric services in other statutes. For example, 17 O.S. § 158.22(4) states "[t]he term 'retail electric services' means electric service furnished to a consumer for ultimate consumption, but does not include wholesale electric energy furnished by an electric supplier to another electric supplier for resale." Although this section does not pertain to the Code, AA found it presented an example of how Oklahoma law treats wholesale electricity different from electric services.

¶ 38 Additionally, AA asserts the OTC's own rules belie its position. OAC 710:65–19–341 (amended at 22 Ok Reg. 1561, eff. June 11, 2005) provided:

(a) General provisions. Generally, the sale of utilities or public services, including natural or artificial gas and electricity are subject to sales tax. [See: 68 O.S. Supp. 1999, § 1354(A)(2) ]

Even under its own rule the OTC refers to electricity and natural gas as a service. It should be noted that the above language is taken from a 2005 amendment to the rule and was the version in effect during 2006. Therefore, two years after the definition of "tangible personal property" was amended to include electricity and "gas" the OTC still referred back to § 1354(A)(2) and its use of the term service to describe electricity and natural gas.

¶ 39 Next, AA argues that because only the services included in § 1354 are taxable, only those services may be exempted. AA determined that out of all the taxable services in § 1354, electricity and natural gas were the only services that are employed in the repair and maintenance of aircraft under the Services Exemption.[20] Therefore, if the

term "services" in the Services Exemption did not include electricity and natural gas utility services it would grant no exemption at all.

¶ 40 In using rules of statutory construction, we may consider other relevant provisions of law to determine legislative intent. Whether the term "services" included electricity and natural gas utility services may be uncertain by only reading the Services Exemption, however, after employing rules of statutory construction it appears clear. We find the term "services" in the Services Exemption was intended to include electricity and natural gas utility services.

¶ 41 The Code refers to electricity and natural gas as a service and also refers to electricity and "gas" as "tangible personal property." The OTC's rule also refers to electricity and natural gas as a service. Only services which are taxable can be exempted. Section § 1354 makes provision for taxing certain services. We find the legislative intent was to use the broad term "services" to exempt any taxable service under 1354 that was employed in aircraft repair and maintenance. The record reflects that out of all these taxable services only electricity and natural gas utility services have been used in the repair and maintenance of aircraft. If we did not find that electricity and natural gas were included in the term "services" it would mean that part of the Services Exemption provided no exemption at all and would therefore be superfluous and useless. That would not fit within the apparent legislative scheme to provide a sales tax exemption to AA. A statute must be read to render every part operative and to avoid rendering parts thereof superfluous or useless. *Moran v. City of Del City*, 2003 OK 57, ¶ 8, 77 P.3d 588, 591. Here, there is enough guidance in the Code and administrative rules to determine the Legislature and the OTC refer to electricity and natural gas as both a "service" and as "tangible personal property." We need not decide if there is any distinction between the use of the two terms because we

---

**20.** AA notes the other taxable services in 68 O.S. Supp.2006, § 1354 include: transportation services (§ 1354(A)(3)), telecommunications services (§ 1354(A)(4)), furnishing hotel rooms and meals (§ 1354(A)(6) and (A)(9)), parking (§ 1354(A)(7)), advertising (§ 1354(A)(10)), and the rental of sports equipment (§ 1354(A)(15)).

find the pertinent term "services" encompasses electricity and natural gas utility services.

### 2. The 2012 Amendment to the Parts Exemption

¶42 The 2012 Amendment to the Parts Exemption (underlined) provided:

20. Sales of aircraft and aircraft parts provided such sales occur at a qualified aircraft maintenance facility. As used in this paragraph, "qualified aircraft maintenance facility" means a facility operated by an air common carrier, *including one or more component overhaul support buildings or structures in an area owned, leased or controlled by the air common carrier,* at which there were employed at least two thousand (2,000) full-time-equivalent employees in the preceding year as certified by the Oklahoma Employment Security Commission and which is primarily related to the fabrication, repair, alteration, modification, refurbishing, maintenance, building or rebuilding of commercial aircraft or aircraft parts used in air common carriage. For purposes of this paragraph, "air common carrier" shall also include members of an affiliated group as defined by Section 1504 of the Internal Revenue Code, 26 U.S.C., Section 1504. *Beginning July 1, 2012, sales of machinery, tools, supplies, equipment and related tangible personal property and services used or consumed in the repair, remodeling or maintenance of aircraft, aircraft engines, or aircraft component parts which occur at a qualified aircraft maintenance facility;*

Title 68 O.S. Supp.2012, § 1357(20); 2012 Okla. Sess. Laws c. 230, § 2 (SB 1465 (2012)) (emphasis added).

The OTC argues if the Services Exemption was intended to include electricity and natural gas utility services then there would be no reason for the Legislature to make this amendment to the Parts Exemption. The OTC asserts the Legislature will not be presumed to have intended a vain or absurd result [21] and the 2012 Amendment must be given meaning.

¶43 To determine the meaning behind the Parts Exemption we look to the title of SB 1465 (2012). SB 1465 provided in pertinent part:

amending 68 O.S.2011, Section 1357, which relates to sales tax exemptions; **providing exemption for sales of certain property related to aircraft repair, remodeling or maintenance . . .**

(emphasis added).

2012 Okla. Sess. Laws c. 230.

The focus appears to be on "property" ("sales of machinery, tools, supplies, equipment and **related** tangible personal property . . . used or consumed in" aircraft repairs). Even though the definition of "tangible personal property" includes electricity and gas it also includes many things like the shop equipment, tools and chemicals that AA conceded were not covered in 2006. The 2012 Amendment therefore has meaning because it provides a new and prospective exemption for such items "used or consumed" in aircraft repairs that did not exist in 2006.

¶44 Based on our analysis in the previous section, the language can also be read to provide an exemption for sales tax paid on electricity and gas as either tangible personal property or as a service. However, there is a difference between the Parts Exemption and the Services Exemption. The Parts Exemption is specifically limited to a "qualified aircraft maintenance facility" whereas the Services Exemption is broader and does not have that limitation. Even though the OTC determined the Parts Exemption and Services Exemption apply only to AA, the Parts Exemption concerns a smaller class (qualified aircraft maintenance facilities). In the present case, AA qualifies for both exemptions. Our determination that the Services Exemption already exempted electricity and natural gas utility services in 2006 does not make the 2012 Amendment's exemption, which applies specifically to qualified aircraft maintenance facilities, a vain act or absurd. AA was entitled to a sales tax exemption for electricity and natural gas utility services in 2006 under the Services Exemption and, after the enactment of the 2012 Amendment, it also

---

**21.** *Strelecki v. Oklahoma Tax Comm'n,* 1993 OK 122, ¶20, 872 P.2d 910, 920.

qualified for the same sales tax exemption as a qualified aircraft maintenance facility. Simply put, in 2012, AA would have qualified for an exemption for sales taxes paid on utility services under two different exemption provisions.

### 3. The Second Part of the Services Exemption Does Not Require AA to be a Vendor of "Services Employed In" Aircraft Repairs Nor Is It Limited to Only Repairs of Other's Aircraft.

¶ 45 The ALJ asserted it was problematic that AA was seeking a sales tax refund on sales tax it paid to its vendors (utility companies). The ALJ noted AA did not sell electricity and natural gas to its customers. He determined electricity and natural gas as services were at best "used or consumed" in the repair of aircraft or aircraft parts for AA's customers not the "sale of services employed" in the repair of aircraft or aircraft parts for AA's customers. The ALJ was creating a distinction between the following parts of the 2012 Amendment and the 2006 Services Exemption:

2012 Amendment to the Parts Exemption (68 O.S. Supp.2012, § 1357(20)):

Beginning July 1, 2012, **sales of** machinery, tools, supplies, equipment and related tangible personal property and **services used or consumed in** the repair, remodeling or maintenance of aircraft, aircraft engines, or aircraft component parts which occur at a qualified aircraft maintenance facility; (emphasis added)

2006 Services Exemption (68 O.S. Supp. 2006, § 1357(28)):

Beginning July 1, 2005, sales of aircraft engine repairs, modification, and replacement parts, sales of aircraft frame repairs and modification, aircraft interior modification, and paint, and **sales of services employed in** the repair, modification and replacement of parts of aircraft engines, aircraft frame and interior repair and modification, and paint; (emphasis added)

The language "sales of . . . services used or consumed in" the repair of aircraft or aircraft parts is new to the 2012 Amendment but for all intents and purposes is identical to the language "sales of services employed in" found in the 2006 Services Exemption.

¶ 46 AA argues the Services Exemption has two component parts. The first part is:

Beginning July 1, 2005, sales of aircraft engine repairs, modification, and replacement parts, sales of aircraft frame repairs and modification, aircraft interior modification, and paint . . .

The second part of the Services Exemption is:

Beginning July 1, 2005 . . . sales of services employed in the repair, modification and replacement of parts of aircraft engines, aircraft frame and interior repair and modification, and paint;

AA contends that the first part clearly pertains to AA as a vendor when it makes repairs to a customer's aircraft; however, the second part does not apply to AA as a vendor. AA asserts the word "employed" means to "make use of."[22] It pertains to any sales of services employed (used) in those repairs. We agree. The record reflects AA paid sales tax on purchases of electricity and natural gas utility services which it employed in aircraft repairs made on its own aircraft as well as a nominal amount on Allegiant's aircraft. The second part of the Services Exemption does not require AA to be the vendor of the services employed nor does it preclude repairs to one's own aircraft. The only requirement is that those services are "employed in the repair, modification and replacement of parts of aircraft engines, aircraft frame and interior repair and modification, and paint." Therefore, we find no merit in the OTC's assertion that the second part of the Services Exemption somehow requires AA to be a vendor of the "services employed in" aircraft

**22.** Oxford Dictionaries online, http://www.oxforddictionaries.com/us/definition/american—english/employ; Merriam–Webster online, http://www.merriam-webster.com/dictionary/employ. The Code does not define "employed." Title 25 O.S. § 1, provides: "Words used in any statute are to be understood in their ordinary sense, except when a contrary intention plainly appears, and except also that the words hereinafter explained are to be understood as thus explained."

repairs or that it is inapplicable to repairs of AA's own aircraft.

## CONCLUSION

¶ 47 We hold in the present case as between these parties, the Services Exemption (68 O.S. Supp.2006, § 1357(28)) provides an exemption for electricity and natural gas utility services used by AA during 2006 in aircraft repair and maintenance activities. The remaining issue concerns the appropriate methodology for determining the amount of the sales tax refund AA should receive on its 2006 purchases of utility services. The adopted Findings, Conclusions and Recommendations did not make a specific finding concerning an appropriate methodology. We remand this matter to the Oklahoma Tax Commission for further proceedings consistent with this opinion.

**THE OKLAHOMA TAX COMMISSION'S ORDER IS REVERSED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION**

ALL JUSTICES CONCUR.