In the Matter of the Income Tax Protest of WILLIAMS NATURAL GAS COM-PANY (Formerly Northwest Central Pipeline Corporation and Cities Service Gas Company) for the Taxable Years Ending December 31, 1972 and 1973, and the Fiscal Periods Ending December 31, 1982, and October 7, 1983.

No. 77064.

Supreme Court of Oklahoma.

June 9, 1992.

Motion to Tax Costs Granted, Opinion Corrected and Motion for Rehearing Denied Sept. 29, 1992.

Martin R. Wing, Bret J. Masterson, Conner & Winters, Rose Mary Ham, The Williams Companies, Inc., Tulsa, for Williams Natural Gas Co.

David Hudson, General Counsel, J.L. Miller, Asst. General Counsel, Oklahoma Tax Com'n Oklahoma City, for Oklahoma Tax Com'n.

HODGES, Vice Chief Justice.

The dispositive issue in this appeal is which of two statutory methods applies to calculate the sales factor for apportioning income to Oklahoma from a unitary, multistate, corporate business. A subsidiary issue is whether the taxpayer is entitled to costs and attorney fees for challenging the Oklahoma Tax Commission's choice of method for calculating the sales factor.

Williams Natural Gas Company (WNG), is a wholly-owned subsidiary of The Williams Companies, Inc. It is a unitary, multistate business which purchased and marketed natural gas in a seven-state area. The gas was moved from the place WNG purchased it to WNG customers through a pipeline which it owns. During 1972 and 1973, more than 95% of WNG's revenues came from the sale of natural gas.

WNG calculated the sales factor portion of its Oklahoma income tax using the point of destination method for "sales of personal property." This same method was used to calculate WNG's taxes in every other state where it paid income tax. The Oklahoma Tax Commission (Commission) issued a proposed assessment for the 1972 and 1973 tax years in August of 1980 using a "traffic units" calculation of the sales factor. On January 7, 1987, the Commission revised its tax assessment to include the previously assessed years and the fiscal periods in 1982 and 1983.

The Commission took no further action on the protest until January, 1987, when the proposed assessment was revised to update the interest accrued. A hearing in the matter was held in May, 1989, before an administrative law judge. The Commis-

sion later granted WNG's request for an en banc hearing which was held in December, 1990. The Commission's order upheld the use of the "traffic units" method of calculating the sales factor for WNG's income tax. WNG brought this appeal.

## I.

■ Under the Oklahoma Income Tax Act, net income from unitary, multistate business operations is apportioned to Oklahoma "on the basis of the arithmetical average of three factors consisting of property, payroll and sales or gross revenue." Okla.Stat. tit. 68, § 2358(A)(5) (1991). The sales factor is a fraction expressing the total sales or gross revenue of the taxpayer in Oklahoma divided by the total sales or gross revenue everywhere. *Id.* at 2358(A)(5)(c). Five separate methods for calculating the sales factor are provided:

(1) Sales of tangible personal property have a situs in this state if the property is delivered or shipped to a purchaser other than the United States Government, within this state regardless of the FOB point or other conditions of the sale; or the property is shipped from an office, store, warehouse, factory or other place of storage in this state and (a) the purchaser is the United States Government or (b) the taxpayer is not doing business in the state of the destination of the shipment.

(2) In the case of a railroad or interurban railway enterprise....

(3) In the case of an airline, truck or bus enterprise or freight car, tank car, refrigerator car or other railroad equipment enterprise....

(4) In the case of an oil, gasoline or gas pipeline enterprise, the numerator of the fraction shall be either the total of traffic units of the enterprise within Oklahoma or the revenue allocated to Oklahoma based upon miles moved, at the option of the taxpayer, and the denominator of which shall be the total of traffic units of the enterprise or the revenue of the enterprise everywhere as appropriate to the numerator. A "traffic unit" is hereby defined as the transportation for a distance of one (1) mile of one (1) barrel of oil, one (1) gallon of gasoline or one thousand (1,000) cubic feet of natural or casinghead gas, as the case may be.

(5) In the case of a telephone or telegraph or other communication enterprise....

*Id.* (The methods are the same ones provided by the 1971 version of the statute in effect during the tax years of the assessment challenged in this action.) At issue, is whether WNG is involved in "sales of tangible personal property" under subsection 1, permitting a point of destination calculation, or whether WNG is a "gas pipeline enterprise" under subsection 4.

WNG argues that subsections 2 through 5 were intended to provide alternatives to the point of destination calculation in subsection 1 because they apply to enterprises involving no sales of tangible property. The Commission argues that the plain meaning of the term "gas pipeline enterprise" makes subsection 4 apply to "an enterprise that earns it's [sic] income as a direct result of owning a pipeline system through which either oil, gasoline or gas may be transported, marketed and sold in interstate commerce, regardless of the form of the transaction."

A basic rule of statutory construction is that "[w]ords used in any statute are to be understood in their ordinary sense, except when a contrary intention plainly appears." Okla.Stat. tit. 25, § 1 (1991). But here, the ordinary meaning of "gas pipeline enterprise" does not resolve the apparent conflict between subsection 1 and subsection 4 as applied to WNG. When resolving apparent conflicts between provisions dealing with the same subject, this Court will attempt to harmonize the provisions without imposing a different meaning than the Legislature intended. *Thornton v. Woodson,* 570 P.2d 340, 341–42 (Okla.1977).

The intent of the statute, taken as a whole, is to provide a factor based on sales

of tangible personal property. But if a business derives its revenues from transportation and transmission fees, rather than from sales, alternative methods of calculation are provided by subsections 2 through 5. Each alternative method is directed towards a particular non-selling enterprise. If a business earns its revenues through sales of tangible personal property, however, the general rule stated in subsection 1 applies and the point of destination method provides the proper calculation.

In Oklahoma, natural gas becomes personal property when produced and reduced to possession. *Replogle v. Indian Territory Illuminating Oil Co.*, 193 Okl. 361, 366, 143 P.2d 1002, 1007 (1943). Over 95% of WNG's revenues were from the sale of natural gas. So there is no dispute that WNG made sales of tangible personal property. But under the Commission's construction of the statute, any entity owning a pipeline would be required to use the traffic units calculation found in subsection 4. The Commission's construction of the statute is erroneous.

This construction would ignore the fact that pipelines perform two functions. They transport gas for others for a fee and they move gas purchased from producers to markets. As WNG explains, its sister corporation, Williams Pipeline Company, transports gas for others for a fee making the traffic units calculation proper for that entity. WNG, however, earns its revenues through the sale of natural gas.

Another problem with the Commission's construction of the statute is its potential for absurd results. For example, retail businesses that use their own trucks to deliver goods for sale in Oklahoma would become "truck enterprises" under subsection 3. The Legislature could not have intended such a construction of the statute.

Finally, the Commission's construction of the statute runs counter to what appears to be the only appellate decision that has addressed the issue. In *Internorth, Inc. v.*

*Iowa State Board of Tax Review*, 333 N.W.2d 471 (Iowa 1983), a similarly situated interstate natural gas marketer was faced with two regulations substantially the same as subsections 1 and 4 of the Oklahoma statute. However, in *Internorth*, the gas marketer used the traffic unit method despite the fact that most of its income came from sales. Only a small fraction of its revenues came from transporting gas for others for a fee. *Id.* at 474. The Iowa Supreme Court reasoned:

> Even though Northern's rate of return is fixed, the amount of its return is affected by the volume of sales, and no income is derived unless sales are made. Its taking title to the gas is a significant and meaningful event. Northern is in no different position in principle than a trucker would be, for example, who purchases watermelons in Texas, brings them to Iowa to sell out of the back of his truck, and fixes their price based on a percentage margin above purchase price and transportation expenses. Even if the major element affecting profit was transportation expenses, the income obviously would be derived from sale of the melons.

*Id.* Thus, the point of destination method was held to be the proper way for that gas marketer to apportion Iowa income.

The same result must obtain in this dispute. It is the type of revenue generated that determines whether an entity is a gas pipeline enterprise, not the mode of transportation of natural gas to market. The Commission erred by applying the traffic units method to WNG.

## II.

 WNG argues it is entitled to costs and attorney fees under title 12, section 941(B) of the Oklahoma Statutes or, in the alternative, under title 42, sections 1983 and 1988 of the United States Code. However, WNG is not entitled to costs or attorney fees under either argument.

Section 941(B) of title 12 provides that in a hearing before a state administrative tribunal, a respondent may recover "costs, witness fees, and reasonable attorney fees" if a proceeding is brought "without a rea-

sonable basis or is frivolous." WNG may not recover under this provision, however, because: (1) this matter presented an issue of first impression involving, as WNG admits, "the statutory interpretation of conflicting provisions"; (2) the Commission's incorrect construction of the statute resulted from the lack of a statutory definition of the term "gas pipeline enterprise"; and (3) the proceedings began before November 1, 1987, the effective date of the provision.

WNG's alternative argument is that it is entitled to costs and attorney fees as damages because the Commission's proposed assessment sought to deprive WNG of its rights under the United States Constitution. It claims that its efforts in opposing the Commission's actions set forth a claim under title 42, sections 1983 and 1988 of the United States Code. However, WNG does not explain how its constitutional rights were violated by attempts at enforcement under the Commission's construction of the statute. Further, WNG raised the sections 1983 and 1988 argument for the first time in its brief in chief to this Court. "This issue was not raised by the pleadings nor in the petition in error, and will not be considered for that reason." *Mothershed v. Mothershed,* 701 P.2d 405, 411 (Okla.1985). WNG is not entitled to costs and attorney fees.

## CONCLUSION

WNG used the correct method to calculate the sales factor portion of its income tax. The Oklahoma Tax Commission is therefore directed to refund the tax and interest paid in this case on February 1, 1991, pursuant to title 68, section 225 of the Oklahoma Statutes.

REVERSED AND REMANDED WITH INSTRUCTIONS.

OPALA, C.J., and LAVENDER, SIMMS, KAUGER, SUMMERS and WATT, JJ., concur.

HARGRAVE and ALMA WILSON, JJ., dissent.