WAREHOUSE MARKET v. STATE ex rel. OKLAHOMA TAX COMM.

Skip to Main Content
Accessibility Statement

Help
Contact Us

e-payments
Careers

Home
Courts
Decisions
Programs
News
Legal Research
Court Records
Quick Links

OSCN Found Document:WAREHOUSE MARKET v. STATE ex rel. OKLAHOMA TAX COMM.

Previous Case

Top Of Index

This Point in Index

Citationize

Next Case

Print Only

WAREHOUSE MARKET v. STATE ex rel. OKLAHOMA TAX COMM.2021 OK 6Case Number: 118504Decided: 02/02/2021THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2021 OK 6, __ P.3d __

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL.

WAREHOUSE MARKET INC., Plaintiff/Appellee,
v.
STATE OF OKLAHOMA, ex rel. OKLAHOMA TAX COMMISSION, Defendant/Appellant,
and
MUSCOGEE (CREEK) NATION, ex rel. OFFICE OF THE TAX COMMISSION, and PINNACLE MANAGEMENT & CONSULTING, LLC., Defendants.

APPEAL FROM THE OKMULGEE COUNTY DISTRICT COURT

Honorable Kenneth Adair, Trial Judge

¶0 The plaintiff/appellee, Warehouse Market subleased a commercial building from the defendant Pinnacle Management, Inc. The building is on federally restricted Indian land. Subsequently, the defendant/appellant, Oklahoma Tax Commission (OTC) and the Muscogee (Creek) Nation Office of Tax Commission (Tribe) both sought to collect sales tax from Warehouse Market. Warehouse Market filed an interpleader action in the District Court of Okmulgee County, in an attempt to have the court determine which entity to pay. However, the trial court dismissed the Tribe because it had no jurisdiction over it because of the Tribe's sovereign immunity. The trial court then determined that the OTC could not be entitled to the sales tax unless and until the dispute between the OTC and the Tribe was resolved in another forum or tribunal. The OTC appealed and we retained the appeal. We hold that because the substance of Warehouse Market's action/request for relief is a tax protest, exhaustion of administrative remedies is a jurisdictional prerequisite to seeking relief in the trial court.

MOTION TO RETAIN PREVIOUSLY GRANTED;
TRIAL COURT REVERSED AND REMANDED WITH INSTRUCTIONS.

James H. Ferris, Randy J. Lewin, Scott V. Morgan, Tulsa, Oklahoma. for Plaintiff/Appellee, Warehouse Market, Inc.

Randall J. Yates, Oklahoma City, Oklahoma, Assistant Solicitor General, Oklahoma Attorney General for Defendant/Appellant, Oklahoma Tax Commission.

KAUGER, J.:

¶1 The dispositive question presented is whether the trial court can address plaintiff's action/request for relief from OTC taxation? We hold that because the substance of the plaintiff's action/request for relief is a tax protest, exhaustion of administrative remedies is a jurisdictional prerequisite to seeking relief in the trial court.

FACTS AND PROCEDURAL HISTORY

¶2 Two tribal members of the federally recognized tribe, the Muscogee (Creek) Nation (the Tribe), own real property within the jurisdiction of the tribe, within the town of Okmulgee, Oklahoma. A shopping center is located on the property. The property is "restricted Indian land," which Federal regulations define as land in which the title "is held by an individual Indian, subject to Federal restrictions against alienation or encumbrance."1

¶3 The landowners leased the property on February 5, 2018, to Pinnacle Management & Consulting, Inc. (Pinnacle) for a period of twenty-five years with an option to renew one (1) twenty-five year period. The lease is titled as the "United States Department of the Interior Bureau of Indian Affairs Business Lease" (BIA Lease) and the purpose of the lease is for Pinnacle to manage the shopping center. The Superintendent of the Okmulgee Agency of the Bureau of Indian Affairs (BIA) approved the lease on February 13, 2018.2 The lease requires new businesses to obtain licensing and pay appropriate sales tax to the Tribe.3

¶4 On October 1, 2018, Pinnacle entered into a Sublease with Warehouse Market, Inc., D/B/A Cox Cash Saver Cost Plus 10% (Warehouse Market). The initial term of the Sublease was for sixteen months, with four additional, optional sixty month terms. The tax provision of the Sublease required the sublessor to pay all attributable real property and assessments to the property.4 The Sublease also required it to be governed by tribal law.5 The Sublease was not approved by the BIA.6

¶5 The record is silent as to whether or how long Warehouse Market may have occupied the premises before it entered into this particular Sublease with Pinnacle. Nevertheless, the Tribe sent a letter to Pinnacle dated September 6, 2018, which stated that effective October 1, 2018, pursuant to the BIA Lease, any retail sales located on the property would be required to pay 6% sales tax to the Tribe. The letter also states that "[t]here is no obligation to pay taxes to any city, county, or state agencies as the Muscogee (Creek) Nation Tax Commission is the only authorized taxation agency allowed to assess or collect taxes on restricted land." Subsequently, Pinnacle passed the information on to Warehouse Market.

¶6 Warehouse Market "had been collecting and remitting" 10.083% sales tax levied by the State of Oklahoma on taxable items at the store. However, for the month of October 2018, as requested by the Tribe, Warehouse Market sent the 6% which the Tribe assessed as sales tax to the Tribe. Warehouse Market also advised the Oklahoma Tax Commission (OTC) that the October 2018 payment would be the last sales tax payment to the State of Oklahoma.7 The OTC responded with a letter dated November 21, 2018, which stated that the full amount of the October taxes were due to the OTC and that future taxes would also be due.

¶7 With the prospect of losing its licensing and permits if it did not remit sales tax to both State and Tribal taxing entities, Warehouse Market filed an action in the District Court of Okmulgee County on December 21, 2018. The filing is labeled as a "Petition for Interpleader and Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction." The action named the OTC, the Tribal Office of Tax Commission, and Pinnacle as defendants.

¶8 Warehouse Market sought to interplead the sales tax it had collected to the Court, and let the Court determine who was entitled to the funds.8 It also sought a determination from the Court as to whether the OTC could tax Warehouse Market at all. Warehouse Market requested restraining orders against both tax entities from pulling its license and/or shutting its store down. The trial court initially granted the interpleader, and granted a temporary restraining order. However, through the course of the proceedings, the trial court ultimately dismissed the Tribal Tax Commission due to sovereign immunity, and the court's lack of subject matter jurisdiction over it. Pinnacle also sought to be dismissed because it had no interest in the funds whatsoever.

¶9 On March 19, 2019, the trial court issued a judgment and order determining that the OTC was entitled to the funds, and dismissing Warehouse Market and Pinnacle from the proceedings. Also on March 19, 2019, Warehouse Market filed a Motion for Summary Judgment, requesting that the Court determine whether the OTC could collect any sales tax whatsoever from Warehouse Market because the business is on Federal restricted land. On March 29, 2019, Warehouse Market filed a Motion to Reconsider the March 19, 2019 order. It asked for an opportunity to respond to the OTC's arguments of entitlement to the funds and authority to tax it.

¶10 On April 15, 2019, the OTC responded to the Motion to Reconsider, arguing that what might have initially been guised as an interpleader for collected sales tax fund, is substantively a tax protest. As a tax protest, Warehouse Market has not exhausted administrative remedies as a jurisdictional requirement before the Court can determine the OTC's taxing authority over Warehouse Market. The OTC cross-motioned for dismissal/summary judgment. After a November 14, 2019 oral argument, the trial court issued a somewhat confusing order on Summary Judgment on November 21, 2019. In it, the trial court appears to have granted Warehouse Market's Motion for Summary Judgment, at least in part, and denied the OTC Request for Dismissal/Motion for Summary Judgment.

¶11 The order states:

. . . Plaintiff's Motion for Summary Judgment is GRANTED only to the extent Defendant Oklahoma Tax Commission is not currently entitled to retail tax proceeds at Plaintiff's subject matter retail establishment unless and until the legitimate dispute between the Muscogee (Creek) Nation and the Oklahoma Tax Commission as to taxation authority is resolved in another forum or tribunal. To allow the Oklahoma Tax Commission to obtain funds or to have exclusive administrative authority over sales tax proceeds would result in catastrophic, permanent and irreparable harm to the innocent party Plaintiff who merely wants to pay its taxes.

Defendant's Cross-Motion for Dismissal or Summary Judgment is DENIED. The OTC filed an appeal on December 20, 2019. We retained the cause on February 18, 2020, and then we ordered additional briefing which was completed on July 28, 2020. The cause was assigned to this chamber on August 6, 2020.

BECAUSE THE SUBSTANCE OF THE PLAINTIFF'S ACTION/REQUEST
FOR RELIEF IS A TAX PROTEST, EXHAUSTION OF ADMINISTRATIVE
REMEDIES IS A JURISDICTIONAL PREREQUISITE TO SEEKING
RELIEF IN THE TRIAL COURT.

¶12 Because the trial court had no subject matter jurisdiction over the Tribal Tax Commission due to sovereign immunity, the Tribal Tax Commission was dismissed and is no longer a party to this cause. Nor is Pinnacle a party because it only served as the sublessor to Warehouse Market. Since the OTC filed this appeal, Warehouse Market has filed a similar action in federal court against the OTC, also seeking relief from that court.9 Nothing in the record indicates that Warehouse Market has pursued any administrative remedies in either the OTC, or the Muscogee (Creek) Nation Tax Commission, to protest either entity's respective tax imposition on Warehouse Market.

A. The Substance of The Plaintiff's Action/Request For Relief is a Tax Protest.

¶13 Warehouse Market asks the trial court to determine whom to pay the taxes to and to stop either the OTC or the Tribe from interfering in its business. The OTC argues that this matter is not merely an interpleader, but really a tax protest. An interpleader is viewed with favor by this Court as a means of avoiding multiple and vexatious litigation. It is an appropriate proceeding whenever (1) two or more claims arise out of the same or related subject matter and (2) the stakeholder is exposed to double or multiple litigation as a result of these claims.10 Without doubt, Market Warehouse's initial petition was in the nature of an interpleader. It specifically requested that it be allowed to deposit the sales tax it had collected, and would continue to collect, which both the OTC and the Tribe asserted claim to, and that the trial court then determine who was entitled to the taxes.

¶14 However, once the trial court dismissed the Tribe because of its sovereign immunity, and the trial court was without any authority to take any further decisive action towards the Tribe, the cause no longer met the basic definition of interpleader and, instead, quickly became nothing more than a tax protest. A tax protest is generally defined as a tax assessment complained to have been illegally levied, alleging that such taxes were illegal because they had been levied without authority.11 Market Warehouse protests the OTC tax assessment and complains that it was illegally levied. It alleges that such taxes were illegal because they had been levied without authority. Consequently, this cause fits squarely within the definition of a tax protest.

B. As a Tax Protest, Administrative Remedies Must Be Exhausted
Before a Protestant May Resort to Relief in the Courts.

¶15 Warehouse Market argues that because this action is not a tax challenge, the trial court may decide to which entity the sales taxes belong. The OTC argues that because the nature of this proceeding is a tax protest, the trial court is without jurisdiction to decide the matter because Warehouse Market has not exhausted its administrative remedies in either the OTC or the Tribe12 or both. We have already determined that Warehouse Market's action/request for relief is a tax protest. This Court has noted on multiple occasions that taxpayers who protest tax assessments must follow the administrative review process before an appeal stands ready for a court's decision.13

¶16 Furthermore, the Oklahoma Legislature has legislatively mandated a specific procedure for taxpayers to challenge any tax assessment levied against them. It does not include initiating the protest in the district courts.14 The procedure includes: the opportunity for a taxpayer to request a hearing before an administrative law judge to challenge the OTC's tax assessment against the taxpayer;15 then an appeal;16 and the possibility of a refund of any unlawfully collected taxes with interest.17

¶17 Taxation is an exclusively legislative function that can be exercised only under statutory authority and in the manner specified by statute.18 The law had long been established that a taxpayer must exhaust the administrative remedies before the courts may act on the matter.19 Such a requirement is a jurisdictional prerequisite to the district court.20 If the law requires an administrative determination precedent to judicial action, the administrative process may not be short-circuited.21 Even the OTC itself cannot circumvent this process. In State ex rel. Okla. Tax Com'n v. Texaco Exploration & Production, Co., 2005 OK 52, ¶7, 131 P.3d 705, a case in which we addressed a pure legal question concerning the method to determine gross value of gas where there is no arm's length sale of the gas at the wellhead, we said:

¶13 The amendments in the 1965 legislative measure to §§ 215 and 221 demonstrate intent that the tax laws be enforced through the administrative process prior to suit in the court. Accordingly, we conclude that 68 O.S.2001, § 215 does not authorize the OTC to forego the administrative assessment process required by 68 O.S.2001, § 221 and file suit for a judicial determination of taxes. This conclusion is consistent with the legislative history of Oklahoma's Uniform Tax Procedure Code and our decisions in taxpayer suits holding that OTC has primary jurisdiction, Cimarron Industries, Inc. v. Oklahoma Tax Commission, 1980 OK 190, 621 P.2d 539, and requiring a taxpayer to exhaust the administrative remedies before the courts may act. Request of Hamm Production Co., 1983 OK 92, 671 P.2d 50.

Consequently, we must reverse the trial court and remand with instructions for the trial court to dismiss the cause. Warehouse Market must exhaust administrative remedies before seeking relief in the courts.

¶18 Upon the dismissal of the action in the district court, there will remain the question of the monies collected as state sales tax by Warehouse Market. Six-hundred-thousand-five-hundred-sixty-five dollars and four cents ($600,565.04) was deposited with the Court Clerk of Okmulgee County at the beginning of this matter and denominated as interpleader. We have determined that this cause is properly a tax protest. The provisions of the statutes governing protests apply.22 Monies originally collected pursuant to the laws governing the collection of state sales tax must be sent to the OTC. The court clerk may charge poundage fees and any other statutory fees for this action.23

CONCLUSION

¶19 Once the trial court dismissed the Muscogee (Creek) Nation because of its sovereign immunity, Warehouse Market's district court action became a tax protest. As a tax protest, administrative remedies must be exhausted before a protestant may resort to relief in the courts. Warehouse Market has administrative remedies available in both the Oklahoma Tax Commission and the Muscogee (Creek) Nation. The Trial Court is reversed and the cause is remanded with instructions to the trial court to dismiss the cause and to order the transfer of the funds deposited with the Okmulgee County Court Clerk excluding poundage and appropriate fees, to the Oklahoma Tax Commission.

MOTION TO RETAIN PREVIOUSLY GRANTED
TRIAL COURT REVERSED
REMANDED WITH INSTRUCTIONS

Darby, C.J., Kauger, Edmondson, Combs, Gurich and Rowe, JJ., concur;

Kane, V.C.J. and Winchester, J. (by separate writing) concur in result.

FOOTNOTES

1 Federal regulations governing Indian lands, 25 C.F.R. § 152, entitled "Issuance of Patents in Fee, Certificates of Competency, Removal of Restrictions, and Sale of Certain Indian Lands," define restricted Indian land. The pertinent terms of 25 C.F.R. § 152.1(c) (Definitions) are:

As used in this part: . . .

(c) "Restricted land" means land or any interest therein, the title to which is held by an individual Indian, subject to Federal restrictions against alienation or encumbrance. . . .

2 Business leases under the BIA are governed by 25 C.F.R. §§162.401-474. 25 C.F.R. §162.441 provides:

§ 162.441 How will BIA decide whether to approve a business lease?

(a) We will approve a business lease unless:

(1) The required consents have not been obtained from the parties to the lease;

(2) The requirements of this subpart have not been met; or

(3) We find a compelling reason to withhold our approval in order to protect the best interests of the Indian landowners.

(b) We will defer, to the maximum extent possible, to the Indian landowners' determination that the lease is in their best interest.

(c) We may not unreasonably withhold approval of a lease.

3 Provision 33 of the lease provides:

TRIBAL TAX ASSESSMENT -- Lessor agrees that any new business that are in agreement of subleasing within the leased premises will complete their licensing, fees and pay appropriate sales tax assessment to the Muscogee (Creek) Nation Tax Commission. These fees shall include sales tax, alcohol tax, sales licensing fees, tobacco taxes, tobacco licensing, motor fuel taxes and any additional taxes or fees as assessed by the Muscogee (Creek) Nation Tax Commission.

Muscogee (Cree) Nation Tax Commission
1523 S. Wood Drive
Okmulgee, OK 74447

4 Provision 5 of the Sublease provides:

Taxes. Sublessor shall pay or cause to be paid all real property taxes and assessments attributable to the Demised Premises and the Shopping Center on or before the due date thereof and give Sublesee proof of payment thereof. Sublessee shall pay any taxes attributable to any of Sublessee's personal property on the Demised Premises. Sublessor warrants that there are no delinquent taxes owed on the Demised Premises or the Shopping Center.

5 Provision 27 of the Sublease provides:

Governing Law. This Sublease shall be int4rpreted and governed by the laws of the jurisdiction in which the Demised Premises are located, namely the Muscogee (Creek) Nation, a federally recognized tribal government, and conducted in court of competent jurisdiction in the Muscogee (Creek) Nation or if the tribe defers, Okmulgee County, Oklahoma, to the exclusion of all other jursidictions.

6 25 C.F.R. §162.453-456. 25 C.F.R. §162.454 provides:

§ 162.454 What are the consent requirements for a sublease of a business lease?

(a) Unless the lease provides otherwise, the lessee must notify all Indian landowners of the proposed sublease.

(b) The Indian landowners must consent to a sublease of a business lease in the same percentages and manner as a new business lease under § 162.012, unless the lease:

(1) Provides that individual Indian landowners are deemed to have consented where they do not object in writing to the sublease within a specified period of time following the landowners' receipt of the sublease and the lease meets the requirements of paragraph (c) of this section;

(2) Authorizes one or more representatives to consent to a sublease on behalf of all Indian landowners; or

(3) Designates us as the Indian landowners' representative for the purposes of consenting to a sublease.

(c) If the lease provides for deemed consent under paragraph (b)(1) of this section, it must require the parties to submit to us:

(1) A copy of the executed sublease or other documentation of any Indian landowners' actual consent;

(2) Proof of mailing of the sublease to any Indian landowners who are deemed to have consented; and

(3) Any other pertinent information for us to review.

7 Warehouse Market does not appear to be asserting sovereign immunity as an "agent" of the Tribe as the plaintiff's did in Enterprise Management Consultants, Inc. v. State ex rel. Okla. Tax Com'n, 1988 OK 91, 768 P.2d 359. Rather, it argues that both the State and the Tribe cannot tax it and that the State has no authority because of the nature of the restricted land.

8 The interpleader statute, 12 O.S. 2011 §2022 provides:

A. Persons having claims against the plaintiff may be joined as defendants and required to interplead when their claims are such that the plaintiff is or may be exposed to double or multiple liability. It is not ground for objection to the joinder that the claims of the several claimants or the titles on which their claims depend do not have a common origin or are not identical but are adverse to and independent of one another, or that the plaintiff avers that he is not liable in whole or in part to any or all of the claimants. A defendant exposed to similar liability may obtain such interpleader by way of cross-claim or counterclaim. The provisions of this section supplement and do not in any way limit the joinder of parties permitted in Section 20 of this act.

B. The provisions of this section shall be applicable to actions brought against a sheriff or other officer for the recovery of personal property taken by him under execution or for the proceeds of such property so taken and sold by him; and the defendant in any such action shall be entitled to the benefit of this section against the party in whose favor the execution issued.

C. The court may make an order for the safekeeping of the subject of the action or for its payment or delivery into the court or to such person as the court may direct, and the court may order the person who is seeking relief by way of interpleader to give a bond, payable to the clerk of the court, in such amount and with such surety as the court or judge may deem proper, conditioned upon the compliance with the future order or judgment of the court with respect to the subject matter of the controversy. Where the party seeking relief by way of interpleader claims no interest in the subject of the action and the subject of the action has been deposited with the court or with a person designated by the court, the court should discharge him from the action and from liability as to the claims of the other parties to the action with costs and, in the discretion of the court, a reasonable attorney fee.

D. In cases of interpleader, costs may be adjudged for or against any party, except as provided in subsection C of this section.

9 We have discretion to take judicial notice of court dockets. See, In re M.K.T., 2016 OK 4, ¶64, 368 P.3d 771. According PACER, the federal court docket database, Warehouse Market filed a lawsuit against the OTC in the Northern District of Oklahoma Federal District Court on November 10, 2020. On December 2, 2020, the OTC requested that the Federal Court stay the proceedings until this cause is resolved.

10 Waggoner v. Johnston, 1965 OK 192, ¶8, 408 P.2d 761; Mid-Central Towing Co. v. National Savings of Tulsa, 2959 OK 244, ¶7, 348 P.2d 327.

11 See, Protest of Chicago, R.I. & P.Ry. Co., 1931 OK 507, ¶4, 2 P.2d 129; Jones v. Kenneday, 1926 OK 522, ¶0, 247 P. 53; Okla. New Co. v. Ryan, 1924 OK 270, ¶0, 224 P. 969.

12 The Muscogee (Creek) Nation, Sales Tax Code, Title 36 §4-108(C) allows for the payment under protest to object to the Tribe's assessment. It provides:

C. Payment under protest. A vendor who receives a notice from the Commissioner as authorized by Title 36, § 6--103 alleging a failure to remit some or
all the sales tax required to be collected and remitted hereunder may make a
full or partial payment of the disputed amount under protest. If a vendor makes
a full or partial payment under protest, the vendor shall receive a credit of one
and one-half percent (1.5%) interest per month, compounded monthly, against
any interest penalty assessed under subsection B of Title 36, § 4--110. In the
event of a finding that the amount of payment under protest exceeds the
vendor's actual liability for taxes owed, the Muscogee (Creek) Nation Tax
Commissioner shall refund any overpayment within thirty (30) days of finality
of such determination.

13 See, Dolese Bros. v. State ex rel Okla. Tax Com'n, 2003 OK 4, ¶3-6, 64 P.3d 1093; Duncan Medical Services v. State ex rel. Okla. Tax Com'n, 1994 OK 91, ¶5, 911 P.2d 247; See also, the numerous cases in which the administrative process for tax protest was properly exhausted before a taxpayer resorted to the courts for redress. Comp. Source Mutual Co. v. State ex rel. Tax Com'n, 2018 OK 54, ¶¶3-6, 435 P.3d 90; In the Matter of Tax Protest of Scioto Ins. Co., 2012 OK 41, ¶0, 279 P.3d 782; Blitz U.S.A., Inc. v. Okla. Tax Com'n, 2003 OK 50, ¶¶3-5, 75 P.3d 883; United Design Corp. v. State ex rel Okla. Tax Com'n, 1997 OK 43, ¶4, 942 P.2D 725; Schulte Oil Co., Inc. v. Okla. Tax Com'n, 1994 OK 103, ¶3, 882 P.2d 65; Koch Fuels, Inc. v. State ex rel Okla. Tax Com'n, 1993 OK 140, ¶¶1-2, 862 P.2 471; Matter of Williams Natural Gas Co., 1992 OK 83, ¶4, 837 P.2d 1387; Kay Elec. Co-op. v. State ex rel. Okla. Tax Com'n, 1991 OK 76, ¶1, 815 P.2d 175; Shop and Swap Advertiser, Inc. v. Okla. Tax Com'n, 1989 OK 81, ¶1, 774 P.2d 1058; Enterprise Management Consultants, Inc., v. State ex rel. Okla. Tax Com'n, 1988 OK 91, ¶1, 768 P.2d 359; Okla. Steel Castings Co. v. Okla. Tax Com'n, 1977 OK 123, ¶2, 570 P.2d 320; Liberty Steel Co. v. Okla. Tax Com'n, 1976 OK 83, ¶4, 554 P.2d 8; Peterson v. Okla Tax Com'n, 1964 OK 78, ¶1, 395 P.2d 388; In re Southwest Chemical Supply, Inc., of Enid, 1960 OK 125, ¶1, 352 P.2d 391; Curry Materials Co. v. Okla. Tax Com'n, 1957 OK 311 ¶0, 319 P.2d 292; Tulsa Machinery Co. v. Okla. Tax Com'n, 1953 OK 52, ¶1, 253 P.2d 1067; City of Claremore v. Okla. Tax Com'n, 1946 OK 122, ¶3, 169 P.2d 299; In re City of Enid, 1945 OK 135, ¶1, 158 P.2d 348; In re Assessment of Sales Tax Against Knapp, 1939 OK 428, ¶1, 95 P.2d 92; . This cause does not fall within those in which the administrative proceeding had limited authority because the matter concerned constitutional challenges. See, Okla. Tax Com'n v. City Vending of Muskogee, 1992 OK 110, ¶2, 835 P.2d 97; Dow Jones & Co., Inc. v. State ex rel Okla. Tax Com'n, 1990 OK 6, ¶¶5-6, 787 P.2d 843 and Title 68 O.S. 2011 §226 provides in pertinent part:

(a) In addition to the right to a protest of a proposed assessment as authorized by Section 221 of this title, a right of action is hereby created to afford a remedy to a taxpayer aggrieved by the provisions of this article or of any other state tax law, or who resists the collection of or the enforcement of the rules or regulations of the Tax Commission relating to the collection of any state tax; however, such remedy shall be limited as prescribed by subsection (c) of this section. . . .

(c) This section shall afford a legal remedy and right of action in any state or federal court having jurisdiction of the parties and the subject matter. It shall be construed to provide a legal remedy in the state or federal courts by action at law only in cases where the taxes complained of are claimed to be an unlawful burden on interstate commerce, or the collection thereof violative of any Congressional Act or provision of the Federal Constitution, or in cases where jurisdiction is vested in any of the Courts of the United States. In all actions brought hereunder service of process upon the Chairman of the Tax Commission shall be sufficient service, and the Tax Commission shall be the sole, necessary and proper party defendant in any such suit, and the State Treasurer shall not be a necessary or proper party thereto. . . ..

14 State ex rel. Okla. Tax Com'n v. Texaco Exploration & Production, Co., 2005 OK 52, ¶7, 131 P.3d 705[Taxation is an exclusively legislative function that can be exercised only under statutory authority and in the manner specified by statute.] Title 68 O.S. 2011 §§201-264. Title 68 O.S. 2011 §227.1 provides:

A. Notwithstanding the provisions of any state tax law relating to or providing for the refund of taxes erroneously paid, no taxpayer shall be entitled to nor be allowed any refund of taxes, penalties or interest paid pursuant to a state tax law subsequently determined by a final decision of a court of competent jurisdiction to be illegal or invalid under the Constitution or laws of this state or of the United States, unless such taxpayer shall have timely availed himself or herself of the remedies and procedures provided by Section 207, 221, 226 or 815 of Title 68 of the Oklahoma Statutes to protest or challenge such tax, or, where the remedies provided by such sections are unavailable because the tax has not yet been assessed or proposed against such taxpayer, such taxpayer shall have brought an action for declaratory judgment in the district court to declare such tax or tax law illegal or invalid.

B. The provisions of this section shall apply to all state taxes, and shall also apply to the refund of any tax imposed by any municipality or county of this state where, under applicable law, such tax is collected by the Oklahoma Tax Commission.

15 Title 68 O.S. 2011 §207 provides in pertinent part:

(c) Any person desiring a hearing before the Tax Commission shall file an application for such hearing, signed by himself or his duly authorized agent, setting out therein:

(1) A statement of the nature of the tax, the amount thereof in controversy, and the action of the Tax Commission complained of;

(2) A clear and concise assignment of each error alleged to have been committed by the Tax Commission;

(3) The argument and legal authority upon which each assignment of error is made; provided, that the applicant shall not be bound or restricted in such hearing, or on appeal, to the arguments and legal authorities contained and cited in said application;

(4) A statement of the relief sought by the taxpayer;

(5) A statement of the witnesses, so far as such witnesses are then known to the taxpayer, showing their names and addresses, and, if the taxpayer so desires, a request that such witnesses be subpoenaed;

(6) A verification by such person, or his duly authorized agent, that the statements and facts therein contained are true.

(d) If, in such application, the taxpayer shall request an oral hearing, the Tax Commission shall grant such hearing and shall, by written notice, advise the taxpayer of a date, which shall not be less than ten (10) days from the date of mailing such written notice, when such taxpayer may appear before the Tax Commission and present argument and evidence, oral or written. The Tax Commission shall, as soon as practicable thereafter, hold a hearing upon the matter and, pursuant to such hearing, shall, as soon as practicable, make an order confirming, modifying or vacating its prior determination, and shall send to the parties appearing before it at such hearing immediately a copy of such order.

16 Title 68 O.S. 2011 §225 provides:

A. Any taxpayer aggrieved by any order, ruling, or finding of the Oklahoma Tax Commission directly affecting the taxpayer or aggrieved by a final order of the Tax Commission issued pursuant to subsection G of Section 221 of this title may appeal therefrom directly to the Supreme Court of Oklahoma. Provided, any taxpayer appealing from a final order of the Tax Commission assessing a tax or an additional tax or denial of a claim for refund may opt to file an appeal in district court as provided in subsection D of this section.

B. Within thirty (30) days after the date of mailing to the taxpayer of the order, ruling, or finding complained of, the taxpayer desiring to appeal shall:

1. File a petition in error in the office of the Clerk of the Supreme Court; and

2. Request that the Tax Commission prepare for filing with the Supreme Court, within thirty (30) days, the record of the appeal, certified by the Secretary of the Tax Commission, and consisting of any citations, findings, judgments, motions, orders, pleadings and rulings, together with a transcript of all evidence introduced at any hearing relative thereto, or such portion of such citations, findings, judgments, motions, orders, pleadings, rulings, and evidence as the appealing parties and the Tax Commission may agree to be sufficient to present fully to the Court the questions involved.

C. Upon request of the taxpayer, the Tax Commission shall furnish the taxpayer a copy of the proceedings had in connection with the matter complained of.

D. In lieu of an appeal to the Supreme Court, any taxpayer aggrieved by a final order of the Tax Commission assessing a tax or an additional tax or denial of a claim for refund may opt to file an appeal for a trial de novo in the district court of Oklahoma County or the county in which the taxpayer resides. If the amount in dispute exceeds Ten Thousand Dollars ($10,000.00), the appeal shall be heard by a district or associate district judge sitting without a jury. If the amount in dispute does not exceed Ten Thousand Dollars ($10,000.00), the appeal may be heard by a special judge sitting without a jury. An order resulting from a trial provided pursuant to this subsection shall be appealable directly to the Supreme Court of Oklahoma by either party. Such appeal shall be taken in the manner and time provided by law for appeal to the Supreme Court from the district court in civil actions. Upon the filing of an appeal, the order of the district court shall be superseded and neither party shall be required to give bond. The provisions of this subsection shall be applicable for tax periods beginning after the effective date of this act. Provided, if the order applies to multiple tax periods which begin before and after the effective date of this act, the appeal provided by this subsection shall be available to the aggrieved taxpayer.

E. If the appeal is from an order of the Tax Commission or a district court denying a refund of taxes previously paid and if upon final determination of the appeal, the order denying the refund is reversed or modified, the taxes previously paid, together with interest thereon from the date of the filing of the petition in error at the rate provided in subsection A of Section 217 of this title, shall be refunded to the taxpayer by the Tax Commission.

F. Such refunds and interest thereon shall be paid by the Tax Commission out of monies in the Tax Commission clearing account from subsequent collections from the same source as the original tax assessment, provided that in the event there are insufficient funds for refunds from subsequent collections from the same source, the refund shall be paid by the Tax Commission from monies appropriated by the Legislature to the special refund reserve account for such purposes as hereinafter provided. There is hereby created within the official depository of the State Treasury an agency special account for the Tax Commission for the purpose of making such refunds as may be required under this section, not otherwise provided. This account shall consist of monies appropriated by the Legislature for the purpose of making refunds under this section.

G. If the appeal be from an order, judgment, finding, or ruling of the Tax Commission other than one assessing a tax and from which a right of appeal is not otherwise specifically provided for in this article the Uniform Tax Procedure Code, any aggrieved taxpayer may appeal from that order, judgment, finding, or ruling as provided in this section. The filing of such an appeal shall supersede the effect of such order, judgment, ruling, or finding of the Tax Commission.

H. This section shall be construed to provide to the taxpayer a legal remedy by action at law in any case where a tax, or the method of collection or enforcement thereof, or any order, ruling, finding, or judgment of the Tax Commission is complained of, or is sought to be enjoined in any action in any court of this state or the United States of America.

17 Title 68 O.S. 2011 §§227-229.

18 Murray County v. Homesales, Inc., 2014 OK 52, ¶9, 330 P.3d 519; State ex rel. Okla. Tax Com'n v. Texaco Expl. & Prod., Inc., 2005 OK 52, ¶7, 131 P.2d 705.

19 Cimarron Industries, Inc., v. Okla. Tax Com'n, 1980 OK 190, ¶6, 621 P.2d 539; Sowder v. Okla. Tax Com'n, 1974 OK 122, ¶32, 527 P.2d 852.

20 Stallings v. Okla. Tax Com'n, 1994 OK 99, ¶10, 880 P.2d 912.

21 Cimarron Industries, Inc. v. Okla. Tax Commission, see note 19, supra. An exception, which is not present in this cause, is when the taxpayer brings a tax challenge under the United States Constitution or a Congressional Act and certain jurisdictional requirements are met such as paying the taxes and then suing for a refund. Cimarron, supra. See, Hamil v. Walker, 1979 Ok 172, ¶4, 604 P.2d 377. Warehouse Market argues that the State of Oklahoma may not tax it due to the regulations of the United States Interior Department Regulations. Title 68 O.S. 2011 §226 provides in pertinent part:

(a) In addition to the right to a protest of a proposed assessment as authorized by Section 221 of this title, a right of action is hereby created to afford a remedy to a taxpayer aggrieved by the provisions of this article or of any other state tax law, or who resists the collection of or the enforcement of the rules or regulations of the Tax Commission relating to the collection of any state tax; however, such remedy shall be limited as prescribed by subsection (c) of this section. . . .

(c) This section shall afford a legal remedy and right of action in any state or federal court having jurisdiction of the parties and the subject matter. It shall be construed to provide a legal remedy in the state or federal courts by action at law only in cases where the taxes complained of are claimed to be an unlawful burden on interstate commerce, or the collection thereof violative of any Congressional Act or provision of the Federal Constitution, or in cases where jurisdiction is vested in any of the Courts of the United States. In all actions brought hereunder service of process upon the Chairman of the Tax Commission shall be sufficient service, and the Tax Commission shall be the sole, necessary and proper party defendant in any such suit, and the State Treasurer shall not be a necessary or proper party thereto. . . .

22 Title 68 O.S. 2011 §§ 201-264, see note 14, supra.

23 Title 28 O.S. 2011 §31 provides in pertinent part:

"[The court clerk shall charge for the ]...[receiving and paying out money in pursuance of law or order of court..........................1% provided, however, that such charge shall not exceed $300.00.

 

 

Winchester, J., with whom Kane, V.C.J. joins, concurring in result:

¶1 I agree that the district court must transfer the interpled tax payments Warehouse Market, Inc. currently owes to the Oklahoma Tax Commission (OTC) amounting to approximately $600,000.1 I write separately to make clear that Warehouse Market ignored long-standing precedent--although the State lacks the power to impose its sales tax on sales made by a tribal entity to a tribal member on tribal land, the State may impose its sales tax on sales made to non-tribal members on tribal land. Okla. Tax Comm'n v. Potawatomi Indian Tribe of Okla., 498 U.S. 505, 512 (1991) (holding Indian retailers on Indian land are required to collect state taxes applicable to sales to non-tribal members). Requiring Warehouse Market to collect these taxes is a minimal burden justified by the interest of the State, city, and county in assuring the payment of these lawful taxes. Id.

¶2 Retail sales tax is the most important revenue source for Oklahoma cities and towns--including Okmulgee--as it provides half of the general fund revenue for the average size community. Grocery sales tax is important, especially critical to rural communities without diversified economies. Generally, sales taxes are an obligation the people place on themselves to pay for municipal and county services. A retailer merely collects these taxes and sends the taxes to the State. In turn, the State sends back the portion due to the city and the county; this taxation method allows communities to provide essential services. Without this voluntary payment for services, municipal budgets would be highly impacted and services impaired. For instance, the OTC collects a 10.08% tax on retail sales in Okmulgee County. The county receives 1.58% and the city receives 4% of the total tax collected from the OTC; the city and county use this money to run local services for the people of Okmulgee.2

¶3 Warehouse Market, a non-Indian retailer, subleased commercial property for a grocery store located on restricted Indian land owned by Muscogee (Creek) Nation. Warehouse Market collected retail sales tax and remitted the taxes to the OTC. On September 6, 2018, the Tribe notified Warehouse Market that the Tribe required the grocery store to pay a 6% sales tax to the Tribal Tax Commission and Warehouse Market owed nothing to the OTC. Specifically, the letter to Warehouse Market stated:

There is no obligation to pay taxes to any city, county, or state agencies as the Muscogee (Creek) Nation Tax Commission is the only authorized taxation agency allowed to assess or collect taxes on restricted land.

Warehouse Market paid the Tribe the 6% sales tax and notified the OTC that the October 18th payment was the last sales tax payment to the State and in turn the last payment to Okmulgee and Okmulgee County. This letter created uncertainty for Warehouse Market as to what to do with the sales tax receipts.

¶4 Although the majority does not address the authority of the OTC to collect these taxes, it is my view that the OTC may collect sales tax from Warehouse Market. See Oklahoma Tax Comm'n, 498 U.S. at 512. Oklahoma law is clear: the statutory procedure to protest a sales tax is that the funds owed to the OTC must first be deposited with the OTC. See 68 O.S.2011, § 226. The district court must therefore transfer the interpled tax payments of approximately $600,000 to OTC and dismiss the case in Okmulgee County District Court. Whether Warehouse Market also owes sales tax to the Muscogee (Creek) Nation is not before this Court and must be decided elsewhere.3

FOOTNOTES

1 Warehouse Market made an initial $57,000 payment and then made additional payments to the district court approximately every month from January 2019 until October 2019. The total amount interpled by Warehouse Market is approximately $600,000.

2 Okmulgee, Oklahoma Sales Tax Rate, https://www.sales-taxes.com/ok/ okmulgee (last visited Jan. 26, 2021).

3 We do not have jurisdiction over the Tribe nor do we have jurisdiction to decide whether Warehouse Market owes taxes to the Tribal Tax Commission.

Citationizer© Summary of Documents Citing This Document

Cite
Name
Level

None Found.

Citationizer: Table of Authority

Cite
Name
Level

Oklahoma Supreme Court Cases
 CiteNameLevel

 1988 OK 91, 768 P.2d 359, 59 OBJ 1963, Enterprise Management Consultants, Inc. v. State ex rel. Oklahoma Tax Com'nDiscussed at Length
 1989 OK 81, 774 P.2d 1058, 60 OBJ 1393, Shop and Swap Advertiser, Inc. v. Oklahoma Tax Com'nDiscussed
 1939 OK 428, 95 P.2d 92, 185 Okla. 584, In re ASSESSMENT OF SALES TAX AGAINST KNAPPDiscussed
 1990 OK 6, 787 P.2d 843, Dow Jones & Co., Inc. v. State ex rel. Oklahoma Tax Com'nDiscussed
 1991 OK 76, 815 P.2d 175, 62 OBJ 2233, Kay Elec. Co-op. v. State ex rel. Oklahoma Tax Com'nDiscussed
 1992 OK 83, 837 P.2d 1387, 63 OBJ 1720, Williams Natural Gas Co., Matter ofDiscussed
 1992 OK 110, 835 P.2d 97, 63 OBJ 2287, Oklahoma Tax Com'n v. City Vending of Muskogee, Inc.Discussed
 1993 OK 140, 862 P.2d 471, 64 OBJ 3276, Koch Fuels, Inc. v. State ex rel. Oklahoma Tax Com'nCited
 1994 OK 99, 880 P.2d 912, 65 OBJ 2532, Stallings v. Oklahoma Tax Com'nDiscussed
 1994 OK 103, 882 P.2d 65, 65 OBJ 3046, Schulte Oil Co., Inc. v. Oklahoma Tax Com'nDiscussed
 1994 OK 91, 911 P.2d 247, 65 OBJ 2510, Duncan Medical Services v. State ex rel. Oklahoma Tax Com'nDiscussed
 1997 OK 43, 942 P.2d 725, 68 OBJ 984, United Design Corporation v. State ex rel. Okla. Tax Comm.Discussed
 1953 OK 52, 253 P.2d 1067, 208 Okla 138, TULSA MACHINERY CO. v. OKLAHOMA TAX COMMISSIONDiscussed
 1946 OK 122, 169 P.2d 299, 197 Okla. 223, CITY OF CLAREMORE v. OKLAHOMA TAX COMM'NDiscussed
 1945 OK 135, 158 P.2d 348, 195 Okla. 365, In re CITY OF ENIDCited
 1957 OK 311, 319 P.2d 292, CURRY MATERIALS COMPANY v. OKLAHOMA TAX COM'NDiscussed
 1959 OK 244, 348 P.2d 327, MID-CENTRAL TOWING CO. v. NATIONAL BANK OF TULSACited
 1960 OK 125, 352 P.2d 391, IN RE SOUTHWEST CHEMICAL SUPPLY, INC., OF ENIDDiscussed
 1964 OK 78, 395 P.2d 388, PETERSON v. OKLAHOMA TAX COMMISSIONDiscussed
 1965 OK 192, 408 P.2d 761, WAGGONER v. JOHNSTONDiscussed
 1931 OK 507, 2 P.2d 935, 151 Okla. 129, PROTEST OF CHICAGO R. I. & P. RY. CO.Cited
 1974 OK 122, 527 P.2d 852, SOWDERS v. OKLAHOMA TAX COMMISSIONDiscussed
 2003 OK 4, 64 P.3d 1093, DOLESE BROS. CO. v. STATE EX REL. OKLAHOMA TAX COMM.Discussed
 2003 OK 50, 75 P.3d 883, BLITZ U.S.A., INC. v. OKLAHOMA TAX COMMISSIONDiscussed
 2005 OK 52, 131 P.3d 705, STATE ex rel. OKLAHOMA TAX COMMISSION v. TEXACO EXPLORATION & PRODUCTION, INC.Discussed at Length
 1924 OK 270, 224 P. 969, 101 Okla. 151, OKLAHOMA NEWS CO. v. RYANDiscussed
 2012 OK 41, 279 P.3d 782, IN THE MATTER OF THE INCOME TAX PROTEST OF SCIOTO INSURANCE CO.Discussed
 1976 OK 83, 554 P.2d 8, LIBERTY STEEL COMPANY v. OKLAHOMA TAX COM'NDiscussed
 2014 OK 52, 330 P.3d 519, MURRAY COUNTY v. HOMESALES, INC.Discussed
 1977 OK 123, 570 P.2d 320, OKL. STEEL CASTINGS CO. v. OKL. TAX COM'N.Discussed
 2016 OK 4, 368 P.3d 771, IN THE MATTER OF M.K.T.Discussed
 1979 OK 172, 604 P.2d 377, HAMIL v. WALKERDiscussed
 2018 OK 54, 435 P.3d 90, COMPSOURCE MUTUAL INSUR. CO. v. STATE ex rel. OKLA. TAX COMM. and OKLA. ASSOC. OF ELECTRIC SELF INSURERS FUND v. STATE OF OKLA. TAX COMM.Discussed
 1980 OK 190, 621 P.2d 539, Cimarron Industries, Inc. v. Oklahoma Tax CommissionDiscussed at Length
 1926 OK 522, 247 P. 53, 118 Okla. 224, JONES Co. Treas. v. KENNEDYDiscussed
 1983 OK 92, 671 P.2d 50, Request of Hamm Production Co. for an Extension of Time in Which to Protest Proposed Gross Production Tax Assessments Issued on July 21, 1981, Matter ofDiscussed
Title 12. Civil Procedure
 CiteNameLevel

 12 O.S. 2022, InterpleaderCited
Title 28. Fees
 CiteNameLevel

 28 O.S. 31, Fees of Court ClerksCited
Title 68. Revenue and Taxation
 CiteNameLevel

 68 O.S. 207, Hearings by Tax CommissionCited
 68 O.S. 215, Collection of Taxes, Penalties, in Same Manner as Personal DebtCited
 68 O.S. 221, Failure of Taxpayer to Make Report or Return - Tax Commission Examination - Taxpayer's Written Protest under Oath - Hearing - Office AuditCited
 68 O.S. 225, AppealsCited
 68 O.S. 226, Action to Recover Taxes as Additional Remedy to Aggrieved TaxpayerDiscussed at Length
 68 O.S. 227.1, Illegal or Invalid State Tax Laws - RefundsCited

oscn

EMAIL: webmaster@oscn.net
Oklahoma Judicial Center
2100 N Lincoln Blvd.
Oklahoma City, OK 73105

courts

Supreme Court of Oklahoma
Court of Criminal Appeals
Court of Civil Appeals
District Courts

decisions

New Decisions
Supreme Court of Oklahoma
Court of Criminal Appeals
Court of Civil Appeals

programs

The Sovereignty Symposium

Alternative Dispute Resolution
Early Settlement Mediation
Children's Court Improvement Program (CIP)
Judicial Nominating Commission
Certified Courtroom Interpreters
Certified Shorthand Reporters
Accessibility ADA

Contact Us
Careers
Accessibility ADA